UNITED STATES of America,
Appellant,

v.

Robert C. and Dorothy S. LANE,
Appellees.

UNITED STATES of America, Laurie W.
Tomlinson, District Director of Internal
Revenue Service, Philip T. McEnery,
Revenue Officer, Henry W. McMillan,
Chief, Collection Division, and Furman
L. Engelo, Revenue Agent, Appellants,

v.

Robert C. LANE, Appellee.

Nos. 19142, 19143.

United States Court of Appeals
Fifth Circuit.

May 9, 1962.
Rehearing Denied Aug. 13, 1962.

Louis F. Oberdorfer, Asst. Atty. Gen.,
Lee A. Jackson, Atty., Dept. of Justice,
Washington, D. C., Edward F. Board-
man, U. S. Atty., Miami, Fla., I. Henry
Kutz, John A. Bailey, Thomas H. Mc-
Peters, Attys., Dept. of Justice, Wash-
ington, D. C., Lavinia L. Redd, Asst.
U. S. Atty., for appellants.

1

Robert C. Lane, Curtiss B. Hamilton, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

TUTTLE, Chief Judge.

The primary issue on this appeal is whether the Government can revive the original income tax liability of a taxpayer who has breached a compromise agreement covering the liability. The District Court resolved this question adversely to the Government. We reverse.

The facts giving rise to this controversy are undisputed. During 1954 and 1955, the taxpayer, Robert C. Lane,[1] made offers to representatives of the Commissioner of Internal Revenue in compromise of his outstanding income tax liability for the years 1947, 1948, 1949, 1952 and 1953. The indebtedness, amounting to $54,253.69, arose from the taxpayer's failure to pay liabilities disclosed on his returns and was not attributable to any deficiency assessment. Liability for this indebtedness was not contested by the taxpayer, negotiations at all times being based on his financial inability to pay.

On December 2, 1955, the taxpayer was notified by letter from the office of the Commissioner that his previously submitted offer in compromise, the terms of which were contained in two documents, was accepted upon the terms proposed. Part of the taxpayer's offer in compromise was submitted on standard Treasury Form 656-C, a document entitled "Offer in Compromise (Deferred Installment Payments)", and provided for the payment by the taxpayer of $29,816.78 as follows:

"$2500.00 remitted with this Offer and; Balance payable $400.00 per month until paid in full. Installments to begin on the 1st day of month following notification of acceptance of offer."

This document also contained the following provision:

"As part of this offer, it is agreed that upon notice to the proponent of the acceptance of this offer in compromise of the liability aforesaid, the proponent shall have no right, in the event of default in the payment of any installment of principal or interest due under the terms of the offer, to contest in court or otherwise the amount of the liability sought to be compromised, and that in the event of such default the Commissioner of Internal Revenue, at his option, (1) may proceed immediately by suit to collect the entire unpaid balance of the offer, *or (2) may disregard the amount of such offer and apply all amounts previously paid thereunder against the amount of the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by distraint or suit (the restrictions against assessment and/or collection being hereby specifically waived) the balance of such liability.*" (Emphasis added.)

The second document making up the compromise agreement was a so-called "collateral income agreement". This document recited that its purpose was "to offer additional consideration for the acceptance of the offer in compromise." In addition to the sum of $29,816.78 mentioned above, the collateral income agreement obligated the taxpayer to make annual payments, from 1955 through 1967, based upon a graduated percentage of "Annual Income" in excess of $15,000, the term "Annual Income" being expressly defined in the agreement. Although by the terms of the collateral agreement the taxpayer would not be liable for any annual payments unless his income exceeded $15,000, he was required to furnish the District Director of Internal Revenue with an annual statement of his income for the preceding calendar year

1. Robert C. Lane will hereafter be referred to as the "taxpayer" although his wife, Dorothy C. Lane, joined with him in filing returns for certain of the taxable years in question.

regardless of the amount. The annual payments were to be paid to the District Director on or before the fifteenth day of the fourth month next following the close of the calendar year and were to be accompanied by a sworn statement of annual income. The collateral agreement expressly stated:

"That the default agreement and the waiver of the statute of limitations on assessment and collection as contained in the printed Form 656-C are also applicable in the event any provision of this collateral agreement is not carried out in accordance with its terms."

On March 22, 1956, the District Director requested the taxpayer, by letter, to furnish a sworn statement of annual income for 1955, and cautioned him that failure to comply could result in an action to collect the full amount of the liability sought to be compromised. The taxpayer did not comply with this request. However, on May 8, 1956, the taxpayer delivered to the Internal Revenue Service a cashier's check for $26,008.36, thereby satisfying his installment obligations under the main agreement. Certificates of Release of Federal Tax Lien were delivered to the taxpayer and were filed on May 9, 1956, discharging the liens of record. There was no suggestion in any of the correspondence exchanged with regard to the cashier's check that the obligations contained in the collateral agreement were to be affected in any way.

On May 29, 1956, another letter was written to the taxpayer calling his attention to the earlier request of March 22, 1956 that he furnish a sworn statement of annual income for 1955. In answer, the taxpayer's accountant replied that the audit for 1955 was incomplete and, therefore, that annual income could not be computed. On July 11, 1956, about three months after the annual payment for 1955 was due to be paid and the sworn statement of income due to be filed, the taxpayer wrote the District Director, claiming for the first time that he had terminated all liability to the Govern-

ment with the cashier's check of May 8, 1956. Further correspondence was exchanged and conferences were held, the taxpayer insisting at all times that he had no further liability and the Internal Revenue Service insisting to the contrary.

The taxpayer likewise refused to make an annual payment and file a sworn statement of income for 1956. As a result, the Commissioner, on November 5, 1957, notified the taxpayer that the compromise agreement was terminated and that the balance of the original tax liability would be declared due, with credit to be applied in reduction of the balance for payments previously made. Shortly thereafter, tax liens covering uncomputed accruals and unsatisfied assessments were filed against the taxpayer.

On October 29, 1958, the taxpayer filed a complaint against the United States, the District Director and the two other employees of the Internal Revenue Service, seeking to enjoin the collection of any taxes or interest based upon the reasserted liens. The Government filed an answer to the complaint and, on March 16, 1959, the Government commenced its own action against the taxpayer seeking to recover the unpaid balance of the taxpayer's original tax liability plus interest. The amount claimed was $31,326.

The two cases were consolidated for trial. The taxpayer contended (1) that his tax liability was completely satisfied with the cashier's check of May 8, 1956 and (2) that, if his liability was not completely satisfied by the payment on May 8, 1956, his only remaining liability was for the annual payments due at the time of trial and not for the unpaid balance of the original tax liability.

The first issue was submitted to the jury, which found that the cashier's check did not terminate the taxpayer's liability under the collateral agreement. The taxpayer has not appealed this finding, and thus it is not at issue here. On the other hand, the District Court agreed with the taxpayer that the Government's recovery was limited to the total amount of annual payments due and owing at the time of

trial and that the Government was not entitled to recover the unpaid balance of the original tax liability. The jury then determined that the total amount due the Government under the District Court's ruling was $6,554.90. The Court entered judgment for that amount in favor of the Government but directed the Government to discharge the liens which had been reasserted against the taxpayer.

The District Court reasoned as follows in holding that the Government could not recover the unpaid balance of the taxpayer's original liability:

"When a man settles with the government on the basis of a reduced amount, if he doesn't carry out this compromise settlement, he is merely liable for not carrying it out; and this is a breach of contract for the purpose in [sic] the measure of what damages would be.

"We are telling them now [i. e. the jurors] that this would be the difference between what he should have paid under his settlement agreement and what he didn't pay, to live up to that settlement agreement.

"I rule that the taxpayer can't be pushed back for years and years and after a settlement is made and have a forfeiture so to speak, of everything he paid in under that settlement agreement.

"Of course, while I know that we are not always dealing in equity in tax cases, still it is always fundamental with this Judge that he is trying to do justice among all the parties and under all the circumstances of the case. Whether he breached the contract or whether he didn't—if he did breach it, it is a difference as to what he should have paid under the settlement agreement and what he should have done and what he had actually done; so if I am wrong, the Court of Appeals or the Supreme Court can decide otherwise."

■■ It has long been settled that an agreement compromising unpaid taxes is a contract and, consequently, that it is governed by the rules applicable to contracts generally. Walker v. Alamo Foods Co., 5 Cir., 16 F.2d 694. The cardinal rule of contract construction "is to ascertain the intention of the contracting parties and to give effect to that intention if it can be done consistently with legal principles." Jacksonville Terminal Co. v. Railway Express Agency, 5 Cir., 296 F.2d 256, 259.

■■ In the present case, the contracting parties expressed their mutual intention in clear and unmistakable terms. The collateral agreement specifically stated that the default provisions of the main agreement on Form 656-C were to be applicable should the taxpayer fail to perform his obligations with respect to the making of annual payments and filing of sworn statements of annual income. Form 656-C, in turn, expressly provided that the Commissioner, upon default by the taxpayer, could terminate the compromise agreement and proceed to collect the unpaid balance of the original tax liability. This language is so precise, and the intention which it manifests is so evident, as to leave no doubt that the course of action taken by the Government here was fully authorized by the compromise agreement.

There was nothing illegal, immoral or inequitable in the compromise agreement. It did not provide for any "forfeiture". By express provision, the amounts to be paid under the compromise agreement, including both the Form 656-C and the collateral agreement, could not exceed the aggregate amount which the taxpayer conceded that he owed the Government from the start. By allowing the Government to revive the taxpayer's original liability, the taxpayer will not forfeit the amounts he has already paid, for those amounts will be applied to reduce the original liability. The agreement was precise, it was fair, and it was freely consented to by the taxpayer. There is no reason why it should not be enforced as written.

Nor can we discern any sound reason for refusing to allow the Government to

reinstate its tax liens against the taxpayer upon revival of the taxpayer's original liability. We think that the Commissioner's undoubted right to recover the unpaid balance of the original liability carried with it the right to secure payment of this amount by reasserting the tax liens. Section 6325(d) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 6325(d) does not require a contrary conclusion. That section merely provides that a certificate of discharge of a tax lien is conclusive that the lien upon the property covered by the property is extinguished. The Government does not contend that the liens on the taxpayer's property were not extinguished when certificates of discharge were issued to the taxpayer in May, 1956. It claims merely that the liens could be revived upon revival of the obligation on which the liens were based. The Government's right to recover the unpaid balance of the original liability would be illusory indeed, if it was not also entitled to the security which the tax liens represented.

The judgment is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.