UNITED STATES of America

v.

Mrs. Margaret Evelyn ROBERTS, Independent Executrix of the Estate of Thelma Alice White Giles, Deceased.

No. B–75–108–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

May 27, 1977.

See also D.C., 436 F.Supp. 560.

William W. Guild, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for United States.

Tanner T. Hunt, Jr., Wells, Peyton, Duncan, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

STEGER, District Judge.

This is a suit brought by the Government against Margaret Evelyn Roberts seeking enforcement of a contract for $13,000.00 which the Government contends was entered into between the Defendant and the Government on October 2, 1972. The issue facing the Court is whether the minds of the parties ever met so that a contract was made. The case was submitted to the Court by stipulation of fact. The parties were rather niggardly with the facts they provided to the Court, although there appears to be little, if any, dispute about them. After thoroughly perusing the stipulation, the exhibits, and the briefs and pleadings of the parties, the Court has managed to glean the following facts from the record:

In 1958, Jerome A. Giles died in Beaumont, Texas. On May 19, 1967, approximately 9 years after his death, the Internal Revenue Service (hereinafter referred to as the IRS) assessed deficiency excise taxes

against the Estate of Jerome Giles and some of his business partners, and perfected liens against Mr. Giles' property interest. These deficiency excise taxes were in the amount of $41,000.00, and the taxes, penalties, and interest totaled in excess of $80,-000.00.

Upon the death of Mr. Giles, all of his property, both real and personal, passed to his wife, Thelma Alice White Giles, who was also the executrix of Mr. Giles' estate. On July 31, 1967, the IRS advised Mrs. Giles by mail that she should be aware of §§ 191 and 192 of Title 31 of the United States Code. According to the IRS, § 192 provided that every executor or other person who pays any debt due by an insolvent person or estate for whom he acts before he pays the debts due the United States for such person or estate shall be personally answerable from his own estate to the extent of such payments for the debts remaining due and unpaid to the United States. The record then indicates that Thelma Giles died on June 12, 1968, and Margaret Evelyn Roberts, the Defendant in this case, became the executrix of her estate. On December 24, 1968, the IRS authorized the institution of an action against the estate of Thelma Giles as the transferee of properties of Jerome Giles.

1. The full text of the letter reads as follows:
"I am authorized by Mrs. Margaret Evelyn Roberts, Independent Executrix of the estate above styled, to offer to settle all federal tax obligations alleged to be owed by such estate for the total amount of $13,000.00.
"I would appreciate hearing from you at your earliest convenience as to the disposition of the Department of Justice concerning this offer, which we consider to be extremely fair and reasonable under the circumstances.
Yours very truly,
/s/ Tanner T. Hunt, Jr.
Tanner T. Hunt, Jr."

2. This letter reads as follows:
"We acknowledge the receipt of your offer dated July 20, 1971, to compromise the above-entitled case. According to our interpretation, your proposal is as follows:
"Mrs. Margaret Evelyn Roberts, Independent Executrix of the Estate of Thelma Alice White Giles has offered to pay $13,000 in full settlement of the tax obligations owed by the Estate of Thelma Alice White Giles as a result of that Estate being a transferee of Jerome A. Giles.

It further appears from the record that on July 20, 1971, the attorney for the Defendant wrote Mr. Morris Silverstein, an attorney for the Tax Division of the Department of Justice, and offered "to settle all federal tax obligations alleged to be owed by such estate (the estate of Thelma Giles) for the total amount of $13,000.00."[1] An attorney for the Tax Division of the Department of Justice responded to the offer of the Defendant on August 9, 1971. In this letter the Tax Division acknowledged the receipt of the offer, which they interpreted to be an offer "to pay $13,000.00 in full settlement of the tax obligations owed by the estate of Thelma Alice White Giles as a result of that estate being a transferee of Jerome A. Giles."[2] The letter further stated that the Defendant's offer would be processed in accordance with normal procedure, and unless the Defendant received a formal notice of acceptance from the Justice Department, the Government was in no way committed to a settlement.

On December 20, 1971, the Defendant's attorney again wrote the Government, observing that his client had not received any notice of a determination on her offer, and asking whether a determination might be forthcoming.[3] In this letter, the Defend-

"Your offer will be processed in accordance with our normal procedure, including obtaining the views of the Chief Counsel, Internal Revenue Service. Final action will then be taken by the Attorney General, or an official designated by him for this purpose. We are sure that you understand that unless you receive from this office a formal notice of acceptance the Department is in no way committed to a settlement.
"Every effort will be made to advise you promptly of the action on your proposal.
Sincerely yours,
FRED B. UGAST
Acting Assistant Attorney General
Tax Division
By: /s/ John J. McCarthy
JOHN J. McCARTHY
Chief
General Litigation Section."

3. The letter of December 20, 1971, from the Defendant's attorney reads as follows:
"By letter dated July 20, 1971, I wrote offering to compromise the matter above styled for the total amount of $13,000.00; the estate's

ant's attorney stated that he had written offering to compromise the liability of the estate of Thelma Alice White for $13,000.00, and further that the estate's liability is alleged to be that of transferee under the estate of Jerome Giles.

The IRS then purported to accept the Defendant's offer by letter dated October 4, 1972. The letter was from the Tax Division of the Justice Department, and stated in part that "the offer has been accepted on behalf of the Attorney General . . . with the understanding that this settlement only constitutes settlement of the transferee liability and does not constitute a compromise of Jerome A. Giles' tax liability." [4]

During the time the parties were negotiating for settlement of the tax liabilities of the estate of Thelma Giles, there apparently arose an opportunity for the Defendant to sell a tract of land that belonged in part to the estate. This tract of land originally belonged to Jerome Giles and several of his business partners. Thelma Giles acquired the interest that Jerome Giles had in the land at his death. Both the Defendant and the IRS were under the assumption that the land in question was burdened by the tax liens that the IRS had filed against the name of Jerome Giles and some of his business partners on July 24, 1967. Whether this lien actually did burden Jerome Giles' interest in the land is subject to question. However, the Court is convinced that both the Defendant and the IRS believed that Jerome Giles' interest in the land was burdened by this federal tax lien filed against his name on July 27, 1967.

Because they believed that the tax lien in question burdened the interest in the land owned by the estate of Thelma Giles, the Defendant and the IRS negotiated for an arrangement which would allow the land to be sold. The Tax Division of the Justice Department then sent to the Defendant's attorney a proposed agreement which would allow the land to be sold and the proceeds of the sale to be held in an escrow account pending a settlement of the tax dispute between the Defendant and the IRS. This agreement proposed by the IRS, the cover letter accompanying the proposed agreement, and the agreement actually reached between the parties support the Court's conclusion that both parties believed that the interest that Thelma Giles had in the property was burdened by the lien filed against the name of Jerome Giles on July 24, 1967. The cover letter makes repeated references to the fact that the

liability is alleged to be that of transferee under the Estate of Jerome A. Giles, Deceased.
"By letter dated August 9, 1971, you indicated receipt of such offer and advised that prompt action would be taken thereon.
"Since that time I have had several conversations with Mr. Silverstein of your office, who has indicated to me that the offer is still being considered pending advices from the Office of General Counsel of the Internal Revenue Service.
"However, to date no determination on the offer has been received.
"I would appreciate very much your looking into the matter to see if such determination might be forthcoming.
"Thank you for your attention to this matter.
Yours very truly,
/s/ Tanner T. Hunt, Jr.
Tanner T. Hunt, Jr."

4. The full text of this letter reads as follows:
"This refers to your offer dated July 20, 1971, submitted on behalf of the Estate of Thelma Alice White Giles, to settle the above-entitled case by payment of $13,000.00.

"This is to advise you that the offer has been accepted on behalf of the Attorney General with the understanding that no part of the payment represents interest for which a deduction may be claimed and with the understanding that this settlement only constitutes settlement of the transferee liability and does not constitute a compromise of Jerome A. Giles' tax liability.
"The Chief Counsel, Internal Revenue Service, has been notified of this action. Please deposit with this office a cashier's or certified check payable to the 'Internal Revenue Service' in the amount of $13,000.00.
"Upon receipt of the check, the Internal Revenue Service and this office will take appropriate action to reflect the settlement of this matter in their respective records.
Sincerely yours,
SCOTT P. CRAMPTON
Assistant Attorney General
By: /s/ James D. O'Brien
JAMES D. O'BRIEN
Acting Chief, Review Section"

proposed agreements are for the disposition of certain pieces of real property "to which the federal tax liens now attach." [5] Further, the agreement proposed by the IRS provides that the proceeds from the sale of the land were to be held as a fund subject to the liens and claims of the IRS and the estate of Thelma Giles with the same priority as such liens and claims have with respect to the real property being sold. The proposed agreement also provides that in consideration for the deposit of the proceeds from the sale of the real property, "the Secretary of the Treasury . . . will issue a Certificate of Discharge of the federal tax lien as to the real property . . . ." The actual agreement entered into between the parties was the same in all pertinent respects as the agreement proposed by the IRS.

Based on this factual background, the Court is faced with determining whether the parties made a contract under which the Defendant agreed to settle, for $13,000.00, the tax liabilities of the estate of Thelma Giles, which arose as a result of Thelma Giles being the transferee of the property of Jerome Giles. The Government contends that such an agreement was reached between the parties. The Defendant contends that no such agreement was reached. According to the Defendant, her offer was to settle all possible federal tax obligations of the estate of Thelma Giles, and the Government's purported acceptance was for something less than that. Further, the Defendant points out that approximately fourteen months elapsed between the time that the Defendant made her offer and the time that the Government purported to accept it. The Defendant contends that before the Government accepted her offer, it expired.

The Government's response to the contention of the Defendant is that it did in fact accept exactly what the Defendant offered. According to the Government, the only liability of the estate of Thelma Giles for any tax liability that Jerome Giles might have had was as a transferee of Jerome Giles' property. The Government asserts that that part of the letter of October 9, 1972, by which the Government purported to accept the offer of the Defendant, which stated that, "this settlement only constitutes settlement of the transferee's liability and does not constitute a compromise of Jerome A. Giles' tax liability," was actually mere surplusage, and was of no consequence since the estate's only liability was that of a transferee.

The Government answers the Defendant's contention that the offer had expired before acceptance, by asserting that the offer had never been withdrawn and that it was accepted before a reasonable period of time had expired. The Government also contends that the Defendant is estopped from attempting to break the contract because she remained silent after the Government attempted to accept her offer and never attempted to disavow the Government's purported acceptance until the statute of limitations had run, preventing the Government from suing the estate of Thelma Giles for its liability as a transferee.

 An agreement compromising unpaid taxes is a contract and, consequently it is governed by the rules applicable to contracts generally. *United States v. Lane*, 303 F.2d 1 (5th Cir. 1962). It is basic law school maxim that in order to have an agreement constituting a contract, the minds of the parties must have met on all of the essential terms. L. Simpson, *Contracts* § 9 (2d ed. 1965). In order to determine whether the minds of the parties ever met, and agreed on the essential terms of

5. The letter of August 5, 1971, states, in addition to the quote in the text,
> "Pursuant to telephone conversations with Mr. Silverstein of this office, we have prepared and are forwarding two proposed agreements for the disposition of certain pieces of real property to which federal tax liens now attach. . . ."

> "We have requested that the District Director of Internal Revenue prepare a Certificate of Discharge of the federal tax liens with respect to the above described properties and forward such to the United States Attorney's office, Beaumont, Texas."

**558**

the contract, the Court must look at the intention of the parties. It is the objective intention of the parties, not the subjective intention, that the Court must ascertain. *Hennigan v. Chargers Football Company*, 431 F.2d 308 (5th Cir. 1970); P. Conway, *Outline of the Law of Contracts* Chapter 11, §§ 1 and 2 (3d ed. 1968). In order to discover this intent, the Court must consider the wording of the instruments alleged to construe the contract in the light of the surrounding circumstances. *Hennigan v. Chargers Football Company, supra.*

■ Bearing these principles in mind, the Court observes that the Defendant's offer, communicated by letter of July 20, 1971, was "to settle all federal tax obligations alleged to be owed by such estate (the estate of Thelma Alice Giles), for the total amount of $13,000.00." In the Court's view, this offer is subject to only one possible interpretation, to wit, the Defendant offered to settle all possible federal tax obligations of the estate of Thelma Giles.

The Government's purported acceptance of this offer was as follows: "This is to advise you that the offer has been accepted . . . with the understanding that this settlement only constitutes settlement of the transferee liability and does not constitute a compromise of Jerome A. Giles' tax liability." Viewing this language in light of the surrounding circumstances, in the opinion of the Court, this letter does not accept the offer as stated by the Defendant. The Government says in this letter that they are not compromising the tax liability of Jerome Giles. Thelma Giles had been advised by the Government by letter dated July 31, 1967, that she might be liable from her own estate for the federal taxes owed by Jerome Giles. Indeed the Government would have no where else to look for satisfaction of the tax liabilities of Jerome Giles, other than the estate of Thelma Giles, because Jerome Giles left all of his property, both real and personal, to his wife Thelma by his will. Thus there was no other property for the Government to look to for satisfaction of Jerome Giles' debts other than the property that had passed to Thelma Giles and became a part of her estate.

Further, the agreement that had been entered into during August of 1971, between the Government and the Defendant, Government's Exhibit 6, stated in paragraph 6 that the proceeds from the sale of the real property previously discussed were to remain deposited in the bank "until the tax dispute between the United States and the Estate of Thelma Alice White Giles with regard to excise tax assessments made against Jerome A. Giles, is settled, litigated to a final determination, or otherwise disposed of."

Based on these circumstances, the Defendant could have quite easily concluded that the Government's letter of October 4, 1972, did not accept her offer in settlement of all tax liability but instead attempted to hold open an aspect of tax liability of Thelma Giles' estate. Any reasonable person would have so concluded. The Defendant was also justified in concluding that the tax liens that the Government had filed against Jerome Giles would still burden the property that Thelma Giles had inherited from Mr. Giles, and under the Government's purported acceptance, she could not withdraw the funds that had been placed in the escrow account. Whether or not the estate could actually have had any further tax liability is of no consequence. The fact that the Government stated that it would not agree to settle one particular aspect of the liability shows that the Government did not agree to compromise all liability, and that was what the offer had been—to settle all liability. Therefore, the acceptance did not conform to the terms of the offer, and no contract resulted. L. Simpson, *Contracts*, § 32, at 46 (2d ed. 1965); 1 Williston, *Contracts* § 73, at 238 (3d ed. 1957). The Government's letter of October 4, 1972, changed a term of the Defendant's offer, and was thus not an acceptance, but was instead a counter offer which was never accepted by the Defendant. L. Simpson, *Contracts* § 32 at 46 (2d ed. 1965).

Based on these considerations, the Court cannot find that the minds of the parties ever met on the essential terms of the con-

tract, and the Court is of the opinion that no contract ever resulted.

 The Court is further of the opinion that parties never made a contract because the Defendant's offer of settlement had terminated before the Government accepted her offer. It is a basic principle of contract law that an offer which states no time limit for its acceptance lapses after the expiration of a reasonable amount of time. P. Conway, *Outline of the Law of Contracts*, Chapter III § 3 para. C (3d ed. 1968); 1 Williston, *Contracts*, § 54 at 172 (3d ed. 1957). Under the facts of this case, the offer in question was obviously still open on December 20, 1971, when the Defendant's attorney wrote the Chief of the General Litigation Section of the Tax Division of the Department of Justice inquiring about the status of the offer, and stating, "I would appreciate very much your looking into this matter to see if such determination (on the Defendant's offer) might be forthcoming." The Government did not respond to this inquiry until October 4, 1972, when they sent their purported letter of acceptance. This occurred approximately nine months after the Defendant's final inquiry about the offer and approximately fourteen months after the offer was originally made. This is beyond a reasonable time. The offer had expired. The Government's initial response to her offer told the Defendant that unless she received a formal notice of acceptance, the Justice Department was in no way committed to settlement. In the absence of such a notice, the Defendant certainly could have reasonably assumed that the issue was dead after a reasonable amount of time.

 The Government's brief asserts that the Defendant should be estopped from "breaking" the contract, because the Government allowed the statute of limitations to run before filing suit against the estate of Thelma Giles. The Government contends that it relied on the Defendant's silence after the letter of "acceptance" was sent to the Defendant in October, 1972, and did not file suit. The Court, however, can see nothing improper or inequitable about the Defendant's actions. She was entitled to treat the letter of October 4, 1972, as a counter offer, since even though it had stated "the offer has been accepted," it did not accept the offer she made, but in fact altered a crucial detail; and further, it arrived after her offer could reasonably be assumed to have expired. Surely the Defendant was not required to respond to this counter offer before the statute of limitations ran on the Government's claim against her. She did not even have to respond at all. The Court can see no reason for holding the Defendant at fault because the Government allowed limitations to expire on its claim against her. The Government is the one who waited fourteen months to respond to her offer, and the Government is the one who added a crucial alteration to its purported acceptance. The Government should have made sure that it had a contract before the statute of limitations period expired. Unfortunately, it did not.

In summary, the Court holds that no contract was ever agreed upon between the parties because (1) the Defendant's offer expired before the Government attempted to accept it; and (2) there was never any meeting of the minds on the essential issues because the Government did not accept the Defendant's offer as offered, but instead made a crucial alteration in the terms.

Any finding of fact heretofore made which constitutes a conclusion of law is hereby adopted as a conclusion of law and any conclusion of law which is a finding of fact is hereby adopted as a finding of fact.