WILLIAM R. LONG, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 36064-87.          Filed July 11, 1989.

*Frank P. Meadows, Jr.,* for the petitioner.
*James E. Gray,* for the respondent.

OPINION

WHITAKER, *Judge:* By statutory notice dated August 14, 1987, respondent determined a deficiency in petitioner's 1981 Federal income tax in the amount of $139,981.41. The issues before us are whether the terms of a closing agreement with respect to certain section 482[1] adjustments between corporations controlled by petitioner have been complied with, and if not, the consequences of such failure.

This case was submitted pursuant to Rule 122, the parties having stipulated all facts. The stipulation and attached exhibits are incorporated by this reference. At the time his petition was filed, petitioner was a resident of Bel Harbour, Florida.

During the year in issue, petitioner was the chief executive officer and controlling shareholder of Long Mfg. N.C., Inc. (Manufacturing). He was also the chief executive officer and sole shareholder of Long Specialty Co., Inc. (Specialty). Both Manufacturing and Specialty kept their books and prepared their tax returns on the accrual method of accounting. As the result of an examination of Manufacturing and Specialty conducted by respondent for 1981, an agreement was reached whereby income, earnings, profits, and inventory were allocated from Specialty to Manufacturing pursuant to section 482. Petitioner executed this closing agreement on behalf of himself, Manufacturing, and Specialty on July 31, 1981, and elected to take advantage of the relief provisions of Rev. Proc. 65-17, 1965-1 C.B. 833. The agreement was executed on behalf of respondent on August 27, 1981.

The agreement in general provided that Manufacturing would establish and record an account receivable to reflect the section 482 allocation in the amount of $107,001.35 as of October 31, 1979, and an additional $610,083.58 as of October 31, 1980. Specialty would establish and record a corresponding account payable. Interest would accrue from May 1, 1981, on the amount established as of October 31, 1979, at the rate of 15 percent per annum. Interest would accrue from May 1, 1981, on the amount established as of

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

October 31, 1980, at the rate of 14.5 percent. The closing agreement required the receivable to be paid within 90 days after August 27, 1981, as follows:

(d) (1) Specialty shall pay [Manufacturing] $717,084.93 in United States dollars in liquidation of the accounts receivable referred to in clause (b) preceding and shall pay in United States dollars the interest thereon * * * .

(2) Payment of the amount of the account receivable specified in clause (d) preceding, in the manner and within the time prescribed herein, shall not constitute taxable income to said taxpayer under Federal internal revenue law.

(3) If [Specialty] fails to make payment of the account receivable and accrued interest thereon, or fails to make payment in full, within the agreed 90-day period the unpaid account receivable and unpaid interest or the unpaid portion of such account receivable and interest, shall be cancelled by treating such amounts as a distribution by [Manufacturing] of its earnings and profits, to the extent thereof but not in excess of such unpaid amounts to William R. Long on the ninetieth day of such period. * * * As of the date of such constructive distribution, the amounts so treated as a distribution shall constitute a contribution to the capital account of Specialty by [petitioner].

Appropriate entries were made on the respective books of Manufacturing and Specialty to reflect the section 482 bookkeeping adjustments required by the terms of the closing agreement. At the time the section 482 adjustments were recorded on Manufacturing's books as a receivable in the amount of $717,084.93, Manufacturing's records reflected an account payable to Specialty in the amount of $564,317.56. This account payable was offset against the account receivable created pursuant to the closing agreement, leaving Manufacturing with a net account receivable of $152,767.37, plus interest. At the end of the 90-day period, accrued interest brought the total in these accounts to $208,291.

At all times during the 90 days after the closing agreement was executed on behalf of respondent, Specialty had the financial ability to pay in full the balance of the account receivable. However, no actual transfer of cash or other property from Specialty to Manufacturing was made during that 90-day period. The remaining balance due to Manufacturing with respect to the section 482 allocation

adjustments and interest accrued thereon was in fact paid in full in cash by June 30, 1982, through the transfer of funds to Manufacturing from Specialty as needed in the former's business operations.

Section 482 authorizes respondent to allocate income between controlled enterprises if he determines that such an allocation is necessary to prevent evasion of taxes or clearly reflect the true income of the controlled enterprises. The purpose of section 482 "is to prevent the artificial shifting of the true net incomes of controlled taxpayers by placing controlled taxpayers on a parity with uncontrolled, unrelated taxpayers." *Bausch & Lomb, Inc. v. Commissioner*, 92 T.C. 525, 581 (1989). Respondent has broad authority to make allocations pursuant to section 482, *Edwards v. Commissioner*, 67 T.C. 224, 230 (1976), which will be upheld absent a showing that he has abused his discretion. *Paccar, Inc. v. Commissioner*, 85 T.C. 754 (1985), affd. 849 F.2d 393 (9th Cir. 1988). There is no dispute between the parties to this proceeding as to the allocations pursuant to which Manufacturing was determined to have additional income. However, they disagree on whether petitioner and his controlled corporations liquidated Manufacturing's account receivable pursuant to Rev. Proc. 65-17 so as to avoid any tax consequences to petitioner.

Standing alone, an allocation pursuant to section 482 necessarily gives rise to a discrepancy between a taxpayer's financial records and its records for tax purposes. To facilitate reconciliation of a taxpayer's financial records with its tax returns, Rev. Proc. 65-17, 1965-1 C.B. 833, "permit[s] taxpayers whose income has been increased by the Service under section 482 of the Code to make certain adjustments to conform their accounts to reflect the section 482 allocations." In such cases an:

account receivable may be established and paid without tax consequences, provided that such account receivable is paid within 90 days after the date of the closing agreement required by section 5.013, below. Payment must be in the form of money, a written debt obligation payable at a fixed date and bearing interest at an arm's length rate determined in the manner provided in section 1.482-2(a)(2) of the Income Tax Regulations * * * or an accounting entry offsetting such account receivable against an existing debt owed by the taxpayer to the other entity. [Rev. Proc. 65-17, sec. 4.02.]

This revenue procedure is a relief provision to avoid the hardship of paying taxes on income never received, and which could not be received without the imposition of additional taxes. *Rubin v. Commissioner*, 429 F.2d 650, 653-654 (2d Cir. 1970). We have held that "The allocation of * * * income pursuant to section 482 does not create a debt obligation; such an allocation is designed merely to accurately reflect the taxpayer's income." *Eisenberg v. Commissioner*, 78 T.C. 336, 347 (1982). Rev. Proc. 65-17 is the only vehicle by which such an obligation may be created and funds transferred to reflect section 482 adjustments without further tax consequences. *Cappuccilli v. Commissioner*, 668 F.2d 138, 140 (2d Cir. 1981).

Having elected to take advantage of Rev. Proc. 65-17, Manufacturing established an account receivable, and Specialty established an account payable, in the amount of $717,084.93. Manufacturing partially offset that account receivable with a pre-existing account payable to Specialty in the amount of $563,317.93, a method of reconciliation expressly provided for in Rev. Proc. 65-17. Because, as petitioner admits, Specialty neither actually transferred funds nor issued an interest-bearing note to Manufacturing within the applicable 90-day period, respondent has treated the balance in that account receivable as a constructive dividend to petitioner and a contribution to Specialty's capital in accordance with the terms of the closing agreement. Petitioner contends that it is inconsistent for respondent to allow a bookkeeping entry to satisfy that portion of the account receivable which is equal to the pre-existing account payable and yet require an actual transfer of funds to satisfy the balance in Manufacturing's account receivable. Petitioner argues that this inconsistency, in and of itself, mandates a decision in his favor. Petitioner further argues that the balance of Manufacturing's account receivable was constructively paid, since Specialty was at all times financially able to satisfy its debt, and in fact did so as business needs required, although after the expiration of the 90-day period.

The provisions of Rev. Proc. 65-17 are, by their own terms, elective. The closing agreement here recited the fact that a section 482 allocation was made and that relief would

be granted under Rev. Proc. 65-17. Petitioner, Manufacturing, Specialty, and respondent were all parties to the closing agreement. Closing agreements are no more than contracts, and are "governed by the rules applicable to contracts generally." *United States v. Lane,* 303 F.2d 1, 4 (5th Cir. 1962). As such, they are to be construed according to the intent of the parties as of the time of entering into the agreement. 17A C.J.S., Contracts, sec. 295 (1963). When the agreement itself is unambiguous, that intent will be inferred from the four corners of the agreement. 17 Am. Jur. 2d, Contracts, sec. 241 (1964). This Court has held that "A closing agreement, once approved by the Secretary, is a final and conclusive agreement between the parties as to all matters contained therein." *Estate of Johnson v. Commissioner,* 88 T.C. 225, 231 (1987), affd. without published opinion 838 F.2d 1202 (2d Cir. 1987).

We find that the closing agreement is unambiguous. It provides that Speciality shall pay Manufacturing the sum of $717,084.93 "in United States dollars * * * ." Payment was to be made within 90 days after respondent executed the closing agreement. The agreement was clear and precise as to amount, time, and medium of payment. Further, not only is the closing agreement unambiguous on its face, but it is pursuant to and subject to the terms of Rev. Proc. 65-17 which provides that relief may be obtained only by payment in the form of money, a written interest-bearing obligation payable at a fixed date, or by offsetting a pre-existing debt. With respect to the balance in Manufacturing's account receivable, it is undisputed that no promissory note was given to Manufacturing, and that there was no offset against any other account payable to Specialty.

Neither do we conclude that the first method of payment was utilized, i.e., that any payment was made in the form of money. Because Rev. Proc. 65-17 is a relief provision, *Cappuccilli v. Commissioner, supra; Rubin v. Commissioner, supra;* it should be narrowly construed. *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 52 (1955). A narrow construction of Rev. Proc. 65-17 is all the more appropriate as that procedure provides relief from adjustments made in order "clearly to reflect the income" of the

parties to the closing agreement. Sec. 482. Therefore, since Rev. Proc. 65-17 requires payment "in the form of money," and the closing agreement required payment in "United States dollars," an actual transfer of funds was required. Petitioner does not contend that such a transfer took place, and indeed there was none. Petitioner's arguments on this issue are unpersuasive. We therefore find for respondent.

Because we hold that constructive payment is insufficient as a matter of law to comply with this particular closing agreement, we need not decide whether Specialty actually made constructive payment to Manufacturing. However, we would note that the result urged upon us by petitioner would render the closing agreement an exercise in futility, as petitioner would have gained its benefit simply by establishing the account receivable and doing nothing further. Rev. Proc. 65-17 requires more than that. While the procedure allows financial records to be adjusted to reflect changes in taxable income, those bookkeeping entries must in turn be reflective of economic reality, viz, a transfer of assets. The accounts receivable and payable provided for in Rev. Proc. 65-17 are but a means to an end, the end being reconciliation of economic realities to tax consequences. However, the procedure exacts a price for reconciliation of a taxpayer's financial records. That price is that a bona fide shifting of assets takes place to reflect the financial adjustments which are allowed to be made without further tax consequences. In other words, substance must follow form.

Petitioner's argument with respect to the perceived inconsistency between allowing an offset of the account receivable against a pre-existing account payable and requiring an actual payment for the balance of the receivable is wholly without merit. Rev. Proc. 65-17 itself specifically allows such an offset, and our discussion above is dispositive of the issue of payment of the balance. Petitioner does not argue that the closing agreement should be reformed or that it is too onerous or arbitrary to be enforced. The provisions of the closing agreement were not complied with by petitioner and his corporations in material respects. The statutory notice reflects the action which the closing

agreement authorized respondent to take under this circumstance. Petitioner is not entitled to any relief.

Accordingly,

*Decision will be entered for the respondent.*