# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60663

EDWARD F. SADJADI; CYNTHIA M. SADJADI,

Petitioners – Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent – Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**
July 7, 2020

Lyle W. Cayce
Clerk

Appeal from a Decision of the
United States Tax Court
Tax Court No. 6351-18L

Before JONES, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This case arises from an offer-in-compromise agreement between the petitioners, Edward and Cynthia Sadjadi, and the IRS for the 2008 and 2009 tax years. According to the offer-in-compromise agreement, the petitioners had to comply with their tax filing and payment obligations for the next five years. The petitioners, however, did not remain current on their tax payment obligations. The IRS therefore issued a Notice of Intent to Levy and a Notice

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60663

of Your Right to a Hearing to the petitioners for the 2008, 2009, 2010, 2011, and 2015 tax years. The petitioners timely filed for a collection due process (CDP) hearing. At the CDP hearing, the settlement officer determined that the IRS had recovered the right to collect the uncompromised balances due on the petitioners' 2008 and 2009 liabilities. The officer reasoned that even though the petitioners had paid the agreed amount under the offer-in-compromise, they failed to comply with the compromise's payment requirements for the next five years. The petitioners then offered to pay $350 per month as part of an installment agreement. The settlement officer declined the petitioners' proposal and imposed the levy. The Tax Court sustained that determination, and the petitioners now appeal the Tax Court's judgment. We affirm.

I.

The petitioners timely filed their tax returns for tax years 2008, 2009, 2010, 2011, and 2015. Although they reported tax owed of $3,251 on their 2008 tax return and $1,047 on their 2009 tax return, the petitioners failed to enclose the attendant payments. The IRS then examined the petitioners' tax returns for 2008, 2009, 2010, and 2011 and determined that they had underreported the taxes that they owed. Subsequently, the petitioners agreed to the assessment of additional unpaid tax liability and accompanying penalties for the 2008 and 2009 tax years. For the 2008 tax year, the petitioners agreed to an additional tax assessment of $10,953 and a penalty of $2,190.60. For the 2009 tax year, they agreed to an additional tax assessment of $18,393 and a penalty of $3,759.

The petitioners then entered into installment payment agreements with the IRS for the 2008 and 2009 tax years. In 2010 and 2011, the petitioners paid more than $8,000 toward their 2008 tax liability, and on February 9, 2011, they made a $100 payment toward their 2009 tax liability. On April 18, 2013, the petitioners and the IRS entered into an offer-in-compromise for the 2008 and

No. 19-60663

2009 tax years. Under this arrangement, the IRS agreed to accept $21,515 in full satisfaction of the petitioners' 2008 and 2009 tax liabilities, provided that the petitioners complied with their tax filing and payment obligations for the next five years.

The parties used the standard offer-in-compromise form. The left-hand column of the form contained the following statement: "I must comply with my future tax obligations and understand I remain liable for the full amount of my tax debt until all terms and conditions of this offer have been met." On the opposite side of that statement, the form states, "I will file tax returns and pay required taxes for the five[-]year period beginning with the date of acceptance of this offer." The left-hand column also contains the following statement: "I understand what will happen if I fail to meet the terms of my offer (e.g., default)." On the opposite side of this statement, the form states, "If I fail to meet any of the terms of this offer, the IRS may levy or sue me to collect any amount ranging from the unpaid balance of the offer to the original amount of the tax debt without further notice of any kind."

Between December 17, 2012, and October 1, 2016, the petitioners made payments toward their offer-in-compromise that totaled $10,650. On October 19, 2016, the petitioners filed their 2015 tax return, but they did not pay their taxes for 2015 that were reported as due. Therefore, the petitioners failed to remain current on their tax payment obligations, which the IRS construed as a default on the offer-in-compromise.

On June 19, 2017, the IRS issued a Notice of Intent to Levy and a Notice of Your Right to a Hearing to the petitioners for the 2008, 2009, 2010, 2011, and 2015 tax years. The petitioners timely filed for a CDP hearing. On October 3, 2017, the settlement officer held the CDP hearing by telephone. At the hearing, she explained that although the petitioners "may have paid the agreed amount of the offer, [they] did not remain in compliance with the paying

No. 19-60663

requirement for the next 5 years meaning the IRS would bring back all of the liabilities." The petitioners thereafter offered to pay $350 per month as part of an installment agreement. The settlement officer declined their proposal and imposed the levy after determining that the petitioners had a monthly disposable income of $6,466.33.

The petitioners appealed to the Tax Court, arguing that the settlement officer failed to consider that they had already paid more than the agreed amount in the offer-in-compromise and that the agreement did not state that compliance is required after the balance is completely paid. The Tax Court sustained the settlement officer's determination. The petitioners now appeal the Tax Court's judgment, claiming that they complied with all the terms and conditions of the offer-in-compromise because they paid the agreed amount. They also argue that they would have arranged to pay the balance owed for 2015 if the offer-in-compromise form properly informed them of the consequences of failing to do so. The IRS does not dispute that the petitioners paid the agreed amount, but it argues that the offer-in-compromise form expressly required the petitioners to remain in compliance for five years regardless of whether the petitioners paid the agreed amount.

II.

The Tax Court reviews the Commissioner's administrative determinations for abuse of discretion where the validity of the underlying tax liability is not at issue.[1] *Sego v. Comm'r*, 114 T.C. 604, 610 (2000). And this court reviews decisions of the Tax Court using the same standards it uses to review the decisions of district courts—findings of fact for clear error and legal questions *de novo*. *Estate of Duncan v. Comm'r*, 890 F.3d 192, 197 (5th Cir.

---

[1] The petitioners here do not challenge the underlying tax liability for the tax years subject to the offer-in-compromise.

4

No. 19-60663

2018). Thus, when there is no challenge to the validity of the underlying tax liability at the CDP hearing, we also review the officer's decision under an abuse of discretion standard. *Christopher Cross, Inc v. United States*, 461 F.3d 610, 612 (5th Cir. 2006) (citing *Living Care Alternatives of Utica v. United States*, 411 F.3d 621, 626 (6th Cir. 2005)); *see also Marascalco v. Comm'r*, 420 F. App'x 423, 423 (5th Cir. 2011) ("Since the underlying tax liability is not at issue, the Tax Court and this court review the Commissioner's administrative determinations for an abuse of discretion."). Acting "arbitrarily, capriciously, or without sound basis in fact or law" constitutes an abuse of discretion. *Estate of Duncan*, 890 F.3d at 197 (quoting *Vinatieri v. Comm'r*, 133 T.C. 392, 400 (2009)).

## III.

On appeal, we must determine whether the settlement officer abused her discretion when she determined that the petitioners defaulted on the offer-in-compromise and sustained the imposition of a levy. The petitioners argue that the aggregate amount of payments they made to the IRS exceed the amount agreed upon in the offer-in-compromise, although they do not argue that their payments exceed the original (i.e., uncompromised) amount owed. They further contend that the offer-in-compromise was not clear and unambiguous and did not properly inform them of their obligations under the agreement. Therefore, the petitioners claim that the offer-in-compromise was complete and that the settlement officer abused her discretion because the petitioners acted in good faith, satisfied all the terms and conditions of the agreement according to their understanding, and paid the agreed amount in the offer-in-compromise earlier than they needed to.

The IRS does not dispute that the petitioners paid the amount agreed upon in the offer-in-compromise. Rather, the IRS argues that the form the petitioners used was clear and unambiguous. The IRS asserts that the

obligation to comply with filing and payment obligations for five years from the acceptance date is not contingent on the petitioners' payment of the amount in the compromise agreement. According to the IRS, the petitioners must comply with tax filing and payment obligations for five years regardless of when the agreed amount is paid, and if the petitioners do not do so, the offer-in-compromise is violated. Thus, the IRS argues that the settlement officer did not abuse her discretion.

Here, we conclude that the settlement officer did not abuse her discretion when she declared the offer-in-compromise had been violated and imposed the levy. An offer-in-compromise is a contract, and the rules applicable to contracts generally govern. *United States v. Lane*, 303 F.2d 1, 4 (5th Cir. 1962). In *Lane*, the form expressly provided that the Commissioner could proceed to collect the unpaid balance of the original tax liability upon the taxpayer's default. *Id.* This court determined that the language of the agreement was "so precise, and the intention which it manifests [was] so evident, as to leave no doubt that the [government's] course of action . . . was fully authorized by the . . . agreement." *Id.*

Similarly, the offer-in-compromise in this case contains clear and unambiguous language that explains the consequences of default. The form states that the petitioners would "file tax returns and pay required taxes for the five[-]year period beginning with the date of acceptance of this offer." The form further explains that the petitioners would "comply with [their] future tax obligations and . . . remain liable for the full amount of [their] tax debt until all terms and conditions of this offer have been met." Indeed, the petitioners conceded that they understood "the necessity of complying with future tax obligations" and "what would happen if they default[ed]." Specifically, if they defaulted, they understood that "the IRS may levy or sue [them] to collect any amount ranging from the unpaid balance of the offer to the original amount of

the tax debt without further notice of any kind." Hence, the offer-in-compromise is "so precise, and the intention which it manifests is so evident, as to leave no doubt that the [government's] course of action . . . was fully authorized by the . . . agreement." *See Lane*, 303 F.2d at 4.

The settlement officer did not abuse her discretion because the offer-in-compromise unambiguously explained that the IRS could levy the petitioners to collect any amount between the unpaid balance and the original amount of the debt and because the petitioners defaulted by failing to remain current on their tax payment obligations. Therefore, the Tax Court did not err in sustaining the settlement officer's determination.

IV.

For the foregoing reasons, we AFFIRM the judgment of the Tax Court.