**Dominic MARCHESE,**
**Plaintiff-Appellant,**

v.

**SHEARSON HAYDEN STONE, INC.,**
**Defendant-Appellee.**

**Nos. 83–6013, 83–6014.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1984.

Decided June 1, 1984.

David Daar, Miller & Daar, P.C., Beverly Hills, Cal., for plaintiff-appellant.

J. Stephen Young, Keesal, Young & Logan, Long Beach, Cal., Willkie, Farr & Gallagher, Armando T. Belly, Brian E. O'Connor, Martha B. Dietz, New York City, for defendant-appellee.

Before CHAMBERS, TANG, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

This case concerns two separate district court actions that have been consolidated on appeal. We are again "confronted with the competing tensions of access to the courts and arbitration." *Amaro v. Continental Can Co.*, 724 F.2d 747, 748 (9th Cir.1984). At the outset we must decide if a valid arbitration agreement exists between the parties. If we hold such an agreement exists, we must then decide: (1) whether a declaratory relief action concerning interpretation of a provision of the Commodity Exchange Act ("CEA") is properly referable to arbitration; (2) whether the district court erred in holding an implied private right of action does not exist under the CEA; (3) whether the district court erred in ordering arbitration of a breach of fiduciary duty claim; and (4) whether the district court erred in confirming the arbitrator's decision on the breach of fiduciary duty claim. We affirm in part, reverse in part, and remand.

## BACKGROUND

For at least the past seven years Dominic Marchese engaged in commodities futures trading [1] through Shearson Hayden Stone, Inc. ("Shearson"), a securities broker and commodities futures commission merchant. The relationship between Marchese and Shearson has been governed by a series of "Commodity Customer Agreements". The last two contracts between the parties were entered in December 1976 ("1976 Agreement") and August 1977 ("1977 Agreement"). The 1977 contract contained an arbitration agreement that is set off from the principal agreement and is separately endorsed.[2] Marchese signed this 1977

---

1. Justice Stevens provides a cogent explanation of the futures trading business in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 357–60, 102 S.Ct. 1825, 1828–30, 72 L.Ed.2d 182 (1982).

2. The arbitration agreement provides:
 "Any controversy arising out of or relating to my account, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the American Arbitration Association of the Board of Directors of the New York Stock Exchange, Inc. as I may elect. If I do not make such elections by registered mail addressed to you at your main office within five days after de-

Agreement when he opened with Shearson an account that is not a subject of these controversies. In fact, no margin was ever deposited and no trading conducted in that account.

In 1978 Marchese filed a district court action in which he sought a declaratory judgment that the "increment and interest" on funds maintained pursuant to section 4d of the CEA, 7 U.S.C. § 6d, and its attendant regulations can only be retained by Shearson up to the amount of its lawful commission ("1978 action"). The district court held that the arbitration clause in the 1976 Agreement was void. It found the arbitration provision failed to meet the requirements set forth in 17 C.F.R. § 180.-3(b)(2) & (4) that arbitration clauses be separately endorsed and contain cautionary language in bold-faced type. It did hold, however, that the 1977 agreement, which contained the cautionary language, was valid and that the claim presented in the 1978 action was within the scope of that agreement. Accordingly, it stayed this proceeding and ordered Marchese to submit this claim to arbitration.

In 1979 Marchese filed a related but distinct district court action ("1979 action"). In this claim he sought damages for losses he allegedly incurred from Shearson's mishandling of his account in violation of the CEA. The district court granted Shearson's motion for judgment on the pleadings on the ground that there was no implied private right of action for violation of the CEA. Marchese amended his complaint to allege a breach of fiduciary duty in addition to the CEA claim. Again the district court stayed the action and ordered Marchese to submit this claim to arbitration.

An arbitration panel selected by the New York Stock Exchange, Inc. considered both of these claims. In February 1983 the arbitrators issued a decision that "dismissed" both claims. Upon Shearson's motions, the court confirmed the arbitrator's decision and dismissed with prejudice both the 1978 and 1979 actions.

## I. APPLICABILITY OF ARBITRATION AGREEMENT

### A. *Standard of Review*

 The interpretation of a contract is a mixed question of fact and law. *Interpetrol Bermuda, Ltd. v. Kaiser Aluminum International*, 719 F.2d 992, 997 (9th Cir. 1983) (citation omitted). If the district court makes factual findings concerning what the parties said and did, they are subject to clearly erroneous review. *Id.* We are here concerned with the principles of contract interpretation which are legal issues that are reviewed *de novo. Id.*

### B. *Analysis*

Marchese advances a host of arguments that the district court erred in relying on the 1977 arbitration agreement to compel arbitration of his claims. We find them unpersuasive.

 The district court determined that, when the accounts in question here were

mand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof."

WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) ENCOURAGES THE SETTLEMENT OF DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. YOU NEED NOT SIGN THIS ARBITRATION AGREEMENT TO OPEN AN ACCOUNT WITH SHEARSON, HAYDEN, STONE (SECTION 17 C.F.R. 180.1–180.6).

BY SIGNING THIS ARBITRATION AGREEMENT, YOU MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW. BUT YOU ARE NOT WAIVING YOUR RIGHT TO ELECT LATER TO PROCEED PURSUANT TO SECTION 14 OF THE COMMODITY EXCHANGE ACT TO SEEK DAMAGES SUSTAINED AS A RESULT OF A VIOLATION OF THE ACT. IN THE EVENT A DISPUTE ARISES YOU WILL BE NOTIFIED THAT SHEARSON, HAYDON, STONE INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE FIVE DAYS IN WHICH TO MAKE THE ELECTION.

opened, the arbitration agreements between the parties were invalid. Shearson does not question that finding. The 1977 Agreement—the last agreement between the parties—was entered into after Marchese opened the accounts that form the basis of these controversies. Marchese claims the 1977 agreement does not apply to the accounts forming the basis of his claims. This argument is faulty. Paragraph 13 of the 1977 Agreement expressly states that "the signing of this agreement revokes any and all other agreements made with Shearson Hayden Stone, Inc." Therefore, the 1977 Agreement superseded all other agreements between the parties and covered all of Marchese's accounts.

■ Marchese further claims the 1977 Agreement is not supported by consideration because he never deposited any margin into the account and did not conduct any transactions in it. This, too, is without merit. The preamble to the 1977 Agreement stated: *"In consideration* of your accepting my account and your agreement to act as my broker, I agree to the following *with respect to any of my accounts with you."* (emphasis added). This specifies the consideration involved. Furthermore, the accounts forming the bases of this lawsuit were evidently active after Marchese signed the 1977 Agreement. The 1977 Agreement applied to these accounts. Trading in these accounts is evidence of additional consideration to support the agreement.

A third argument advanced by Marchese is that the 1977 Agreement was induced by fraud and is therefore invalid. Specifically, he claims that Shearson was in a fiduciary relationship with him and that its failure to advise him of the invalidity of the previous arbitration clauses constituted constructive fraud within the meaning of California Civil Code § 1573.[3] We disagree.

■ As a securities broker and commodities futures commission merchant, Shear-

son stood in a fiduciary relationship with Marchese. *See Securities & Exchange Commission v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 194, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963). This status imposed on it an "affirmative duty of utmost good faith, and full and fair disclosure of all material facts." *Id.* We find that Shearson did not breach this duty or engage in any constructive fraud. First, the 1977 Agreement cited the relevant federal protective regulations, including 17 C.F.R. § 180.3. There was no concealment of the existence of these regulations or the fact that these regulations invalidated the previous agreements. *Cf. Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 720 F.2d 1446, 1450-51 (5th Cir.1983) (holding no fraud in arbitration agreement). Second, the 1977 Agreement contained the necessary cautionary language, including the provision that Marchese "need not sign this arbitration agreement to open an account with Shearson Hayden Stone." This emphasized the voluntariness of the decision to agree to arbitration. The agreement expressly stated that signing this new "Commodity Customer Agreement" revoked all other agreements. Marchese could have entered into the basic Commodity Customer Agreement without agreeing to the separate arbitration provision. Had he not desired arbitration, he could have effectively repudiated his prior arbitration agreements by signing the basic agreement but not endorsing the arbitration provision. We find that Shearson did not fail to disclose any material information that resulted in any advantage to it.

## II. 1978 ACTION

### A. *Standard of Review*

■ A district court's decision to compel arbitration of a claim depends on an interpretation of the arbitration agreement

---

**3.** California Civil Code § 1573 provides in pertinent part that Constructive Fraud consists in any breach of duty which, without any actually fraudulent intent, gives an advantage to the per-

son in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him.

and a determination that the matter in question is appropriate for arbitration. Both determinations are questions of law subject to *de novo* review. *See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462–63 (9th Cir. 1983); *see also Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (appropriateness of dispute for arbitration was based on consideration of the applicable statutes).

## B. *Analysis*

We now consider whether it was proper for the district court to refer Marchese's 1978 claim to arbitration. Section 4d(2) of the CEA, 7 U.S.C. § 6d(2), places restrictions on the manner in which a futures commission merchant may deal with the "money, securities and property" of a customer. The statute provides in part that the customer's "money may be invested in [certain] obligations ... in accordance with such rules and regulations and subject to such conditions as the Commission may prescribe." 7 U.S.C. § 6d(2). 17 C.F.R. § 1.29 provides in part that the permissible investments "shall not prevent the futures commission merchant ... investing such funds from receiving and retaining as its own any increment or interest resulting therefrom." *See also* 17 C.F.R. § 1.25.

Marchese's 1978 action is brought as a class action and seeks a declaratory judgment that section 4d of the CEA, 7 U.S.C. § 6d, and its attendant regulations establish that plaintiffs are entitled to the "interest and increment" on the margin deposits except to the extent of Shearson's lawful brokerage charge. Marchese argues that arbitration is inappropriate when the cause of action concerns only the interpretation to be given to a federal statute of this nature. Shearson counters by arguing that the arbitration agreement encompasses all disputes relating to Marchese's account, including this one.

■ We begin our analysis by considering the arbitration agreement. "[A] party cannot be compelled to arbitrate any matter in the absence of a contractual obliga-

tion to do so." *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 250–51, 97 S.Ct. 1067, 1071–72, 51 L.Ed.2d 300 (1977); *see Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 861 (9th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). The agreement here provides in pertinent part that "[a]ny controversy arising out of or relating to my account, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration." We ordinarily will not except a controversy from coverage of a valid arbitration clause "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leyva*, 593 F.2d at 860, (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). This liberal construction of arbitration agreements is in harmony with the national policy favoring arbitration that Congress evinced when it enacted the Federal Arbitration Act, 9 U.S.C. § 1 *et seq. See Southland Corp. v. Keating*, — U.S. —, —, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12 (1984).

■ To help us determine which disputes are intended to be arbitrated, we need to focus on the inherent distinction between "statutory and contractual rights," *Leyva*, 593 F.2d at 863. It is now clear that at least claims based on "nonwaivable statutory rights", *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir.1984), will not easily be construed as being within the coverage of an arbitration agreement. *See, e.g. Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) (Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*); *Amaro*, 724 F.2d at 749 (§ 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140); *Leyva*, 593 F.2d at 863 (Fair Labor Standards Act). Absent at least an

express provision, we will not construe an agreement as contemplating arbitration of these types of statutory claims. *Leyva*, 593 F.2d at 863.

Some disputes, however, may not be a proper subject of arbitration even if the agreement contains an express provision. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court considered the applicability to the Securities Act of 1933 of an arbitration agreement which provided for arbitration of any controversy between the investor and the brokerage firm. The Court held the agreement invalid, finding that the non-waiver provision in § 14 of the Securities Act forbad waiver of any rights under the Act, including the plaintiff's right to choose the forum. *Id.* 346 U.S. at 438, 74 S.Ct. at 188. The Court reasoned that the protection Congress afforded investors by the Securities Act of 1933 was "not easily reconcilable" with the Congressional policy favoring arbitration found in the United States Arbitration Act, 9 U.S.C. § 1 *et seq.* (1952). *Id.* It held the protection exhibited by the Securities Act predominated over the policy favoring arbitration. Id. Similarly, the Second Circuit in *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 825–28 (2d Cir.1968), relied on *Wilko* to hold claims under the antitrust laws were not proper subjects of arbitration. *See also Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831 (7th Cir.1977) (Securities Exchange Act claims not of international nature are not proper subjects of arbitration).

▇▇▇▇▇ These cases are consistent with the concept that "non-waivable statutory rights", *Amaro*, 724 F.2d at 752, are best left to judicial interpretation. Essentially, courts have engaged in a "balancing process" to determine which statutory rights should be left to the judiciary to interpret and apply. *Waits v. Weller*, 653 F.2d 1288, 1292 & n. 9, (9th Cir.1981). We agree with Shearson that arbitrators, in appropriate cases, may decide questions of law. *See Lundgren v. Freeman*, 307 F.2d 104, 109 (9th Cir.1962); *see also Wilko*, 346 U.S. at 431–32, 74 S.Ct. at 184–85 (expressed hope for use of arbitration in disputes based on statutes). In some situations, however, it has been determined that for policy reasons the balance as a matter of law weighs against arbitration of certain disputes. *E.g. Wilko*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (Securities Act of 1933); *Power Replacements, Inc. v. Air Preheater Co.*, 426 F.2d 980 (9th Cir.1970) (antitrust claims). We have not foreclosed the possibility that in other situations the balance may swing in favor of arbitration if there is an express provision, fairly bargained for, that provides for arbitration of the statutory question. *See Leyva*, 593 F.2d 857, 863 (9th Cir.1979). It is up to case-by-case interpretation to determine which statutes are such that an arbitrator can consider the statutory claim.

The courts that have considered the enforceability of arbitration agreements in the context of the CEA have reached differing results.[4] We note, however, that the courts of appeal that have considered this have been unanimous in upholding the arbitrability of claims in the context of the commodities futures market. The opinion that most thoroughly considers this issue is *Ingbar v. Drexal Burnham Lambert, Inc.*, 683 F.2d 603 (1st Cir.1982). The first circuit there rejected the argument that the doctrine of *Wilko v. Swan* forbids predispute broker-customer arbitration agreements. *Id.* at 605. It reasoned that the CFTC has promulgated regulations that ex-

---

4. Decisions holding in favor of arbitrability of CEA claims include *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446 (5th Cir.1983); *Ingbar v. Drexal Burnham Lambert, Inc.*, 683 F.2d 603 (1st Cir.1982); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459 (3rd Cir.1982); *Romnes v. Bache & Co.*, 439 F.Supp. 833 (W.D.Wis.1977). *See Tamari v. Bache & Co.*

*(Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir.1977) (a declaratory relief action based on alleged fraud in violation of CEA is referable to arbitration).

Cases holding to the contrary include *Milani v. Conticommodity Services, Inc.*, 462 F.Supp. 405 (N.D.Cal.1976); *Breyer v. First National Monetary Corp.*, 548 F.Supp. 955 (D.N.J.1982); *Bache Halsey Stuart, Inc. v. French*, 425 F.Supp. 1231 (D.C.Cir.1977).

pressly authorize predispute arbitration agreements and guard their fairness and voluntariness. *Id.* at 605–06. The court found that the CEA, unlike the Securities Act of 1933, does not contain a clause allowing the plaintiff the right to choose the judicial forum or a clause forbidding waiver of the statutory rights. *Id.* at 605. Accordingly, it held referable to arbitration a dispute concerning the broker's liability for Ingbar's loss on his investment. *Id.* at 606.

*Ingbar* and the other circuit decisions are inapposite to our consideration of Marchese's 1978 claim.[5] None of these cases concerned purely the interpretation of a statute as we have here. They instead primarily involve the type of factual inquiry that arbitrators traditionally have handled.

▌ We conclude that the district court erred in staying Marchese's 1978 claim and compelling arbitration of it. First, the agreement here does not expressly sweep statutory disputes within the scope of arbitration. Second, we will not construe an agreement such as the one here as encompassing disputes of this nature. This action only involved an interpretation of a statute. That " 'is a primary responsibility of courts', not arbitrators." *Amaro,* 724 F.2d at 750 (*quoting Alexander,* 415 U.S. at 57, 94 S.Ct. at 1024). As we recently said: "[A]rbitrators, many of whom are not lawyers, ... lack the competence of courts to interpret and apply statutes as congress intended." *Amaro,* 724 F.2d at 750 (citation omitted). The 1978 action does not entail any factual inquiry concerning whether Shearson properly handled Marchese's funds.

Moreover, we are influenced by the protective nature of the CEA. A principal purpose of the CEA "is to ensure fair practice and honest dealing" in commodity futures trading. S.Rep. No. 93–1131, reported in 3 U.S.Code Cong. & Admin.News, 93d Cong., 2d Sess., pp. 5843, 5856 (1974). This counsels against allowing arbitrators to interpret this legislation. *See Milani v. Con-*

*ticommodity Services, Inc.,* 462 F.Supp. 405, 407 (N.D.Cal.1976); *cf. Wilko,* 346 U.S. at 438, 74 S.Ct. at 188 (Securities Act designed to protect investors and disputes under it are not referable to arbitration). Further militating against arbitration of this claim is the fact that arbitrators that consider these CEA claims may include other brokers, "insiders in the commodities industry", *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1205–06 (7th Cir.1977) (Swygert, J. dissenting), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978). To force Marchese to have a broker interpret whether the brokers or their customers are entitled to the interest and increment on the broker's investment of the customers' funds would deny the customer the objectivity envisaged by legislation of this type. *Cf. American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821, 827 (2d Cir. 1968) (quoting *Wilko v. Swan,* 201 F.2d 439, 445 (2d Cir.) (Clark, J., dissenting), *rev'd,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (arbitration does not assure the objective consideration of a securities claim intended by the Securities Act). That would not comport with the spirit of the CEA. *See Tamari,* 565 F.2d at 1205 (Swygert, J., dissenting).

Finally, our holding is consistent with the policies favoring arbitration. By statutorily establishing the desirability of arbitration, Congress desired in appropriate cases to avoid the expense, delay, and complications inherent in litigation. *See, e.g., Wilko,* 346 U.S. 431, 74 S.Ct. 184. Our decision, however, will not result in a flood of litigation. Marchese's 1978 claim involves interpretation for the first time in this circuit of section 4d of the CEA and its attendant regulations. Judicial construction of this question will obviate the need for further judicial consideration of this precise issue. It will also provide assistance to arbitrators by clarifying the law if an arbitrator is required in the future to apply this statute.

---

**5.** *See* Section III C, *infra.*

## III. THE 1979 CLAIM

### A. *Implied Cause of Action under CEA*

#### (1) Standard of Review

The district court granted Shearson's motion for judgment on the pleadings on this issue. Because it is apparent the district court considered matters outside the pleadings, we will treat this as a grant of summary judgment. Fed.R.Civ.P. 12(c). Because there is an absence of any issue concerning the existence of a material fact, we need only decide whether the district court correctly applied the substantive law. *See Amaro*, 724 F.2d at 749.

#### (2) Discussion

■■■ Marchese claims that the district court erred in granting Shearson judgment on the pleadings on Marchese's claim based upon a violation of the CEA. We agree. Subsequent to the district court's decision the Supreme Court held that violations of the CEA imply a private cause of action. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). The district court erred in not allowing Marchese to pursue this claim.

Notwithstanding the Supreme Court's decision in *Curran*, Shearson argues that the arbitrators' dismissal of the breach of fiduciary duty claim precludes consideration of this implied right of action claim because the breach of fiduciary claim arises from the same operative facts as the CEA claim. This issue was not adequately briefed [6] or brought up at oral argument. The record on appeal does not contain a transcript of the arbitral proceedings. Accordingly, we are simply unable to determine whether the arbitral proceedings which "dismissed" Marchese's breach of fiduciary duty claim should have preclusive effect over this claim for a violation of the CEA. For these same reasons we reject Shearson's argument that the district court's error is harmless within the mean-

ing of Rule 61 of the Federal Rules of Civil Procedure.

We reverse the district court's grant of judgment on the pleadings based on its finding that no private right of action exists under the CEA and remand the case for further consideration.

### B. *The Breach of Fiduciary Duty Claim*

#### (1) Standard of Review

■■■ The district court's interpretation of an arbitrator's decision is a question of law, subject to *de novo* review. This is a question in which there is only a writing to interpret without the need to weigh the credibility of witnesses. *Cf. Interpetrol Bermuda, Ltd.*, 719 F.2d at 992 (contract interpretation may include factual finding concerning what parties said and did).

#### (2) Discussion

The arbitration decision read, in pertinent part, that the arbitrators "having heard and considered the proofs of the parties, have decided and determined that the claims of the claimant be and hereby are in all respects dismissed." Upon Shearson's motion, the district court confirmed this arbitral decision and dismissed Marchese's breach of fiduciary duty claim with prejudice.

■■■ Marchese claims the district court erred because the arbitrators did not reach the merits of this claim and that he should now be left to his legal remedies. Specifically, Marchese relies on rule 604 of the Arbitration Rules of the New York Stock Exchange, Inc. ("NYSE"). That rule provides:

> [a]t any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to the remedies provided by law. The arbitrators shall

---

**6.** Shearson's brief cites two cases to support this argument, neither of which is relevant to the

facts as we understand them.

upon the joint request of the parties dismiss the proceedings.

Marchese claims that because this is the only NYSE Arbitration Rule in which "dismissal" is discussed, the effect of the arbitrators' "dismissal" of his claim is to refer the parties to their other legal remedies. Marchese essentially claims that under rule 628 of NYSE's Arbitration Rules only an arbitral decision labeled an "award" is deemed final so that it is appropriate to be entered as a judgment in a court of competent jurisdiction. We disagree.

Though it may be wise for an arbitration panel acting pursuant to the NYSE's Arbitration Rules to distinguish expressly between "dismissals" and "awards" in its decisions, we will hold them to no such technical niceties. Instead we will consider the substance of the decision to determine whether the arbitrators intended their decision to be an award under rule 628, a dismissal under rule 604, or some other "ruling" or "determination", *see* rule 623. We are convinced that the substance of the arbitral decision shows a clear intent that the decision be an "award" within rule 628. The decision stated that the arbitrators had "heard and considered the proofs of the parties" and had "decided and determined that the claims" be dismissed. We do not see how this language can be interpreted any way other than that the arbitrators considered and determined the merits of Marchese's claim, making in favor of Shearson an award within the meaning of rule 628.

We further note that the decision did not "refer the parties to the remedies provided by law", rule 604. That distinguishes this case from *Rhodes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 75 A.D.2d 767, 427 N.Y.S.2d 826 (1980), the authority on which Marchese primarily relies. In *Rhodes* the arbitrators expressly dismissed the proceedings *and* referred the parties to their remedies at law. *Id.* at 768, 427 N.Y. S.2d at 827. This would be a different case had Marchese similarly been referred to his legal remedies.

## C. *Arbitrability of Breach of Fiduciary Duty Claim*

### (1) Standard of Review

■ This is a question of law which we review *de novo*. *Mediterranean Enterprises, Inc.*, 708 F.2d at 1462–63.

### (2) Discussion

■ Marchese also appeals the district court order that stayed the court proceeding and compelled arbitration of the breach of fiduciary duty claim. On this matter we agree with the general tone of the other circuits that the policy favoring arbitration of this type of issue outweighs the countervailing considerations. *E.g. Smoky Greenhaw*, 720 F.2d 1446 (5th Cir.1983); *Ingbar*, 683 F.2d 603 (1st Cir.1984).

Unlike the provisions of the Securities Act of 1933 considered by the Court in *Wilko*, the CEA expresses congressional approval of arbitration. In 1974 Congress amended the CEA to sanction expressly the use of arbitration for the settlement of traders' claims not exceeding $15,000. 7 U.S.C. § 7a(11) (1974), *see Curran*, 456 U.S. at 366, 102 S.Ct. at 1833. The CFTC promulgated regulations that allowed arbitration of disputes in excess of $15,000. 17 C.F.R. § 180.5. In 1982 Congress amended section 7a(11) to delete reference to the $15,000 limitation. The reasoning behind *Wilko*, therefore, is inapplicable to this claim. *See Ingbar*, 683 F.2d at 605–06. Furthermore, our decision here is consistent with this circuit's recent decision in *Amaro*. Unlike *Amaro*, we do not here consider a statutory claim. *See Amaro*, 724 F.2d at 749.

We hold the district court did not err in compelling arbitration of this claim. We do not express, however, any view on whether Marchese's claim based on an implied private right of action under the CEA is a proper subject for arbitration. *Cf. Salcer v. Merrill Lynch, Pierce, Fenner & Smith*, 682 F.2d 459 (3d Cir.1982) (this type claim

is proper subject of arbitration). That issue was not briefed or argued.[7]

## CONCLUSION

We hold that the district court erred in compelling arbitration of the 1978 case and in granting Shearson judgment on the pleadings in the 1979 claim based on a finding that there is no implied private right of action under the CEA. We further conclude the district court did not err in compelling arbitration of the breach of fiduciary duty claim or in its confirmation of the arbitrator's decision on that claim.

AFFIRMED in part, REVERSED in part, and REMANDED. Each party to bear its own costs.

---

**7.** We also express no view on whether claims arising before the 1982 amendment to 7 U.S.C. § 7a(11) and for an amount in excess of $15,000 are a proper subject of arbitration. *Compare Breyer v. First National Monetary Corp.,* 548 F.Supp. 955 (D.N.J.1982) (holding these claims are not arbitrable) *with Ingbar,* 683 F.2d at 605 (stating the $15,000 limitation does not preclude arbitrability). This question has not been briefed or argued here and is considered not to be in issue. Marchese only cited *Breyer* at the end of a post-argument brief that the court expressly ordered was to be limited to the impact of *Amaro v. Continental Can,* 724 F.2d 747 (9th Cir.1984), on this case.