**LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, CULINARY WORKERS UNION, LOCAL 226 and Bartenders Union, Local 165, Plaintiffs-Appellees,**

v.

**ROYAL CENTER, INC., Defendant-Appellant.**

**No. 84–1867.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 17, 1985.

Decided May 22, 1985.

Richard D. McCracken, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiffs-appellees.

John A. Lawrence, Rudin, Richman & Appel, Beverly Hills, Cal., for defendant-appellant.

Before CHOY, FARRIS, and BEEZER, Circuit Judges.

FARRIS, Circuit Judge:

Royal Center, Inc. appeals the order of the District Court for Nevada, Foley, J. presiding, which had required RCI to submit to arbitration two grievances arising out of RCI's collective bargaining agreement with appellee Local Joint Executive Board of Las Vegas, Culinary Workers Union et al. RCI argues that the closure of its business terminated its collective bargaining agreement, along with any obligation to arbitrate grievances that arose after the closure occurred.

In early 1980, RCI completed its acquisition of a complex in Las Vegas, Nevada, consisting of a casino, hotel and entertainment facilities. At that time, RCI entered into a collective bargaining agreement with the Union, which represented approximately 60% of the restaurant, casino, bar and housekeeping employees at the complex.

The agreement provided an exclusive arbitration remedy for "*all* grievances." A "grievance" was broadly defined as "a dispute or difference of opinion between the Union and the Employer involving the meaning, interpretation, application to employees covered by this Agreement, or alleged violation of any provision of this Agreement." Section 29.02 of the agreement also provided that in the event RCI sold its business, RCI would require its successor to assume the Collective Bargaining Agreement with the Union.

In March 1982, accumulated operating losses caused RCI to close its complex and terminate all employees covered by the collective bargaining agreement. Several months later, RCI sold the complex to a limited partnership, 305 Convention Center Drive Associates. The sale contract did *not* require the 305 corporation to assume RCI's collective bargaining agreement with the Union, despite Section 29.02 of that agreement. The 305 corporation performed substantial alterations and reopened the complex in November 1983 as a family arcade with game center, cartoon theater, and slot machine and mechanical gaming devices. RCI continues to operate the gaming devices, employing approximately fifty employees, not all of whom fall within the job classifications covered by the collective bargaining agreement with the Union.

Shortly after the reopening, the Union filed unfair labor practice charges with the National Labor Relations Board. The NLRB dismissed the Union's charge that 1) RCI and the 305 corporation had improperly refused to bargain with the Union, and 2) that no bona fide sale of business had occurred to the 305 corporation. The Union's appeal to the General Counsel of the NLRB was denied in March 1984.

The Union sued RCI in Nevada state court in December 1983, charging that RCI had 1) violated Section 29.02 by failing to condition the sale of the complex on the 305

corporation's assumption of the collective bargaining agreement, and 2) violated the collective bargaining agreement's hiring and other substantive terms after resuming operations with the 305 corporation in November 1983. Under this second allegation, the Union argued that no bona fide, arms-length sale of the complex had occurred, and hence the new enterprise was still covered by the collective bargaining agreement between RCI and the Union.

RCI removed the action to the District Court of Nevada. The district court granted the Union's Motion to Compel Arbitration of the Union's two grievances.

RCI appeals, claiming that the district court erred in deciding 1) that the collective bargaining agreement had not been terminated by RCI's closure of the complex, and 2) that the Union's grievances fell within the scope of the arbitration clause. We have jurisdiction over RCI's timely filed appeal under 28 U.S.C. § 1291.

## I. DID THE ARBITRATION CLAUSE SURVIVE THE CLOSURE OF RCI'S OPERATIONS AND TERMINATION OF THE COLLECTIVE BARGAINING AGREEMENT?

The district court found that the collective bargaining agreement had not been extinguished when RCI closed its operations, and therefore that the agreement's arbitration clause continued to govern disputes arising after the closure. Because we find that the arbitration clause here survives closure regardless of whether the collective bargaining agreement generally remained in effect, we affirm the district court's decision to refer the dispute over section 29.02 to the arbitrator.

■ "Termination of a collective bargaining agreement does not necessarily extinguish a party's duty to arbitrate grievances arising under the contract." *O'Connor Co. v. Carpenters Local Union No. 1408*, 702 F.2d 824, 825 (9th Cir.1983); *see Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers*, 412 F.2d 899, 903–04 (9th Cir.1969), cited with approval by *George Day Construction Co., Inc. v. United Brotherhood of Carpenters*, 722 F.2d 1471, 1479 (9th Cir.1984). In fact, when the agreement has been extinguished by closure, we must presume that the parties intended the arbitration duty to survive. *Nolde Bros. Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977). This presumption favoring arbitrability "must be negated expressly or by clear implication," *Nolde*, 430 U.S. at 255, 97 S.Ct. at 1074; *see also United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *Federated Metals Corp. v. United Steelworkers*, 648 F.2d 856, 859 (3d Cir.) *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981), and draws its vitality from federal labor policy and the relative inexpensiveness and expertise of the arbitrator. *Nolde*, 430 U.S. at 253–55, 97 S.Ct. at 1073–74; *Holly Sugar Corp.*, 412 F.2d at 904.

■ RCI presents no evidence to negate the presumption that its arbitration clause, which covers "all grievances," survives the termination of the agreement. The broad definition of arbitrable "grievances"—"a dispute or difference of opinion between the Union and the Employer involving the meaning, interpretation, application to employees covered by this Agreement, or alleged violation of any provision of this Agreement," is indistinguishable from arbitration provisions held to survive termination of the collective bargaining contract. *See Nolde*, 430 U.S. at 245, 252–55, 97 S.Ct. at 1068, 1072–74 (preserving duty to arbitrate "any grievances" following closure and expiration of contract); *John Wiley & Sons v. Livingston*, 376 U.S. 543, 553, 554, 84 S.Ct. 909, 916, 917, 11 L.Ed.2d 898 (1964) (preserving post-termination arbitration of "any differences, grievance or dispute between the Employer and the Union arising out of or relating to this agreement, or its interpretation or application, or enforcement"). The arbitration provision here survives regardless of whether the collective bargaining agreement was extinguished by RCI's closure.

## II. DO THE GRIEVANCES FALL WITHIN THE SCOPE OF THE ARBITRATION CLAUSE?

■ We must next consider whether this particular controversy is covered by the duty to arbitrate. Like the survivability issue, the question of the scope of the

arbitration duty is "a matter to be determined by the Court on the basis of the contract." *John Wiley*, 376 U.S. at 547, 84 S.Ct. at 913, citing *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); *see Frederick Meiswinkel, Inc. v. Laborers' Union Local 261*, 744 F.2d 1374, 1376 (9th Cir. 1984); *Salinas Cooling Co. v. Fresh Fruit and Vegetable Workers*, 743 F.2d 705, 707 (9th Cir.1984).

■ Following the Supreme Court, we have emphasized that the scope of the duty to arbitrate must be read quite broadly. As we recently held, "[w]e ordinarily will not except a controversy from coverage of a valid arbitration clause 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984), citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). When, as in this instance, the parties have agreed to submit "all grievances" to an arbitrator, "[t]he courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. at 568, 80 S.Ct. at 1346 (footnote omitted); *see John Wiley*, 376 U.S. at 555, 84 S.Ct. at 917.

Applying this lenient standard, the Supreme Court has referred for arbitration a dispute over severance pay rights, *see Nolde*, and a dispute over contractual seniority rights, *see Piano & Musical Instrument Workers, Local 2549 v. W.W. Kimball Co.*, 333 F.2d 761 (7th Cir.), *rev'd per curiam*, 379 U.S. 357, 85 S.Ct. 441, 13 L.Ed.2d 541 (1964), arising after a plant closing. The Court found dispositive the fact that "there is nothing in the arbitration clause that *expressly excludes* from its operation a dispute which arises under the contract, but which is based on events that occur after its termination." *Nolde*, 430

U.S. at 253, 97 S.Ct. at 1073 (emphasis added). Without such an express exclusion, and applying the general presumption in favor of a broad scope for arbitration clauses, the Court sent the disputes to arbitration. *Id; see also John Wiley*, 376 U.S. at 554–55, 84 S.Ct. at 916–17.

### A. *The grievance over Section 29.02 was properly sent to the arbitrator.*

■ *Nolde* controls our decision. The arbitration clause does not "expressly exclude" a dispute over RCI's obligation to condition its sale of business on the 305 corporation's assumption of the collective bargaining agreement. Under *Nolde* and the general presumption in favor of a broad scope for arbitration clauses, the Section 29.02 grievance was properly sent to arbitration.

This result is also consistent with circuit court decisions referring claims for severance pay, pension benefits, vacation pay, and other typical collective bargaining rights due after a plant closing. *See, e.g., United Steelworkers v. American Smelting and Refining Co., Inc.*, 648 F.2d 863 (3d Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *United Steelworkers v. Fort Pitt Steelcasting Division-Conval-Penn, Inc.*, 635 F.2d 1071 (3d Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981); *Monroe Sander Corp. v. Livingston*, 377 F.2d 6 (2d Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967). All of these rights are directly implicated by Section 29.02, which works a complete transfer of severance pay, vacation, wage, seniority and other bargained-for terms to the new employer.

RCI, however, seeks to distinguish these cases as permitting arbitration only of "rights undeniably *accruing* under contract *prior to termination.*" Because the benefits arising out of Section 29.02 of RCI's collective bargaining agreement will not accrue until *after* termination, RCI argues that arbitration is not necessarily compelled by prior cases.

RCI's focus on accrual, however, was implicitly rejected by the Supreme Court in *Nolde, see Federated Metals Corp.*, 648 F.2d at 861 (upholding benefits that had not even accrued until after contract ex-

pired); *Local No. 595, International Association of Machinists v. Howe Sound Co.*, 350 F.2d 508 (3d Cir.1965) (same). We have also questioned the accrual argument. *George Day Construction Co.*, 722 F.2d at 1478–79.

More importantly, RCI's distinction runs counter to the reasoning in *John Wiley*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. The Court held that a package of wage, pension, severance and vacation pay rights, *id.* at 552, 84 S.Ct. at 916, was arbitrable even after the original company merged with a new corporation and terminated the agreement. To reach its decision, the Court focused not on whether the rights "accrued" before or after the agreement was terminated, but instead on *preserving the original intent of the parties* as well as possible, when circumstances have arisen that were unanticipated when the agreement was drafted. *Id.* at 554, 84 S.Ct. at 916. Because the package of rights would have been "plainly arbitrable" if the unanticipated merger had not occurred, the Court preserved their arbitrability after the merger as well.

The logic of *John Wiley* compels the arbitration of Section 29.02. The clause mandating carryover of the Union's labor contract is of no value to the bargaining Union until the contract for the sale of business is actually negotiated. This sale will frequently occur contemporaneous with or after closure of the original business—i.e., after the original contract has been terminated. Although the parties here did not "expressly contemplate", *id.* at 554, 84 S.Ct. at 917, a sale occurring after termination, the only way to preserve their intent that Section 29.02 be of any value to the Union would be to permit arbitration. In this way, rights that would have been "plainly arbitrable" had the sale occurred *prior* to termination will be preserved despite the unanticipated occurrence of a sale *after* termination.

The only result consistent with the original intent of the parties, 376 U.S. at 554, 84 S.Ct. at 916—and with the presumptively broad scope of arbitration—would be to send this dispute to the arbitrator. *Cf. American Smelting and Refining Co.*, 648 F.2d at 867 (upholding arbitrator's award of benefits to employees permanently laid off for six months after expiration of con-

tract); *Fort Pitt*, 635 F.2d at 1078 (rejecting ten-month delay between contract termination and closure as a basis for excusing employer from duty to arbitrate).

RCI raises one final argument against interpreting Section 29.02 to fall within the scope of the arbitration clause. Where there has been a virtual 100% turnover of employees, application of a collective bargaining agreement negotiated on behalf of prior employees is "fundamentally unfair to the new employee complement and saddles the new operation with an agreement ill fitting its operational needs." This argument, however, is irrelevant to the issue of arbitrability before us; it instead goes to the advisability, on policy grounds, of enforcing a contractual provision freely bargained for by RCI in 1980. Apart from the inequity of allowing RCI to escape a contract provision freely entered into, any inquiry into the merits of the provision is explicitly barred by Supreme Court precedent. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. at 568, 80 S.Ct. at 1346 ("[t]he courts ... have no business weighing the merits of the grievance, [or] considering whether there is equity in a particular claim.") (footnote omitted).

### B. *The "alter ego" grievance.*

█ Because there has not been an "express exclusion" of the issue whether RCI sold its business in a bona-fide, arms-length transaction to the 305 corporation, *see Nolde*, 430 U.S. at 253, 97 S.Ct. at 1073, the general presumption favoring a broad scope for arbitration clauses indicates that the "alter ego" grievance was properly referred to the arbitrator.

█ However, the NLRB Regional Director has already decided that "there is insufficient evidence that 305 Convention Drive Associates, L.P., is an alter ego of Royal Center Inc." This decision has been upheld on appeal to the NLRB General Counsel.

In *Carpenters' Union Local No. 1478 v. Stevens*, 743 F.2d 1271, 1277 (9th Cir.1984), we recently held that the NLRB's express finding that one company was not the alter ego of the other company would preclude any extension of a collective bargaining agreement to the non-signatory, non-alter ego company. As the Joint Board properly

acknowledged in oral argument, *Carpenters' Local* will preclude any attempt by the Union to enforce its collective bargaining agreement against the 305 corporation, since the NLRB has already determined that 305 is not the alter ego of RCI.

But *Carpenters' Local* does more than bar the Union from proceeding against the *305* corporation. It also precludes the Union from obtaining any arbitration award from *RCI* that may be based on a contrary finding that 305 is in fact the alter ego of RCI. *See* 743 F.2d at 1277 (barring contractual damages against the signatory corporation that were based on the fact that the non-signatory corporation was an alter ego). Now that the NLRB has determined that 305 is not the alter ego of RCI, the arbitrator is prohibited from making an award that is inconsistent with the NLRB's determination.

*See Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964) ("the Board's ruling would, of course, take precedence [over the arbitrator's]"); *Cannery Warehousemen, Food Processors, Drivers and Helpers v. Haig Berberian, Inc.*, 623 F.2d 77, 81 (9th Cir.1980) (citing extensive line of cases following *Carey* on this point).

On the other hand, the Union correctly notes that two Ninth Circuit cases bar us from, in effect, giving collateral estoppel power to the NLRB's finding that 305 is not the alter ego of RCI. As we held in *Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275, 1280 (9th Cir. 1982), "an NLRB refusal to issue a complaint ... cannot prohibit the unions from obtaining relief from the dispute resolution system for which they bargained—arbitration." *See also Paramount Transp. Systems v. Chauffeurs, Teamsters & Helpers, Local 150*, 436 F.2d 1064, 1066 (9th Cir. 1971). Because the instant case involves the "essentially factual" determination of whether an alter ego relationship exists, *see J.M. Tanaka Const., Inc. v. NLRB*, 675 F.2d 1029, 1033 (9th Cir.1982); *NLRB v. Lantz*, 607 F.2d 290, 295 (9th Cir.1979); *see also Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942), we are governed by *Edna Pagel*'s holding that "in cases involving issues of fact or contract interpretation the NLRB's refusal to issue a complaint does not act as res judicata or bar a party from seeking arbitration under the collective bargaining agreement." 667 F.2d at 1279–80.

Following *Edna Pagel*, we therefore AFFIRM the district court's decision to send the alter ego issue to the arbitrator. However, the arbitrator should note that the "supremacy doctrine," *Haig Berberian*, 623 F.2d at 81, citing *Carey*, 375 U.S. at 272, 84 S.Ct. at 409, requires that he give proper deference to the NLRB's earlier finding that the 305 corporation is not the alter ego of RCI. If the Union introduces additional evidence not before the NLRB, or alternative theories for an award other than the alter ego theory, the arbitrator may still make an award in the Union's favor without acting "inconsistently" with the NLRB's earlier finding.

## III. CONCLUSION

"Whether or not the Union's demands have merit will be determined by the arbitrator in light of the fully developed facts. It is sufficient for present purposes that the demands are not so plainly unreasonable that the subject matter of the dispute must be regarded as non-arbitrable because it can be seen in advance that no award to the Union could receive judicial sanction." *John Wiley*, 376 U.S. at 555, 84 S.Ct. at 917. Under this lenient standard, and in light of the presumption favoring both survival of an arbitration clause and a broad reading of that clause, the district court's order submitting the Section 29.02 grievance and the alter ego issue to arbitration is AFFIRMED.