**WAREHOUSEMEN'S UNION LOCAL NO. 206, affiliated with the International Brotherhood of Teamsters and Helpers of America, Plaintiff-Appellee,**

v.

**CONTINENTAL CAN COMPANY, INC., a foreign corporation, Defendant-Appellant.**

**No. 86–4044.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1987.

Decided July 7, 1987.

Josephine B. Vestal, Bellevue, Wash., for defendant-appellant.

Stephen H. Buckley and Paul C. Hays, Portland, Or., for plaintiff-appellee.

Before FARRIS and BRUNETTI, · Circuit Judges, and INGRAM, District Judge.[*]

FARRIS, Circuit Judge:

## BACKGROUND

Local No. 206 represents all of the shipping department employees at the Continental Can Company's Portland plant. The company and the union had a collective bargaining agreement from 1981 to 1984. When that agreement terminated in May, 1984, the parties began negotiations for a successor agreement. One topic discussed in negotiations was the company's plan to engage an independent contractor to cover all its transportation needs. In September, a contract covering the period 1984 to 1986 was ratified by the membership. The new contract made brief mention of the company's intent to subcontract its transportation operations. In December the company, acting on its interpretation of the subcontracting clause, laid off all of its union truck drivers and arranged for an independent labor broker to provide drivers. The union contended that the company could contract with another company for transportation, but that "as long as Continental Can Company has a truck fleet, Local 206 will drive them."

The union first petitioned the regional director of the NLRB, on the theory that the company's hiring of nonunion drivers violated the National Labor Relations Act. The regional director declined to issue a complaint against the company, and his decision was affirmed by the NLRB's General Counsel. The union then filed a grievance under the contract alleging that the company had violated the provision that nonunion persons cannot be employed to do bargaining-unit work. After the company refused to go to binding arbitration on the issue, the union sought an order in the district court compelling arbitration. The court held that the dispute concerned the terms of the 1984–1986 agreement, and therefore that it came under the agreement's mandatory arbitration clause. The court granted summary judgment for the

union and ordered that the dispute be submitted to an arbitrator.

On appeal, the company contends that the 1984–1986 agreement never went into effect because the parties did not agree on the meaning of its language. It argues alternatively that the decision of the NLRB not to issue a complaint against the company resolved the issue, precluding this suit.

In reviewing summary judgment, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). We affirm.

## DISCUSSION

I. *Was there a contract?*

The company submitted its final offer for a new contract on September 24, 1984. On September 29, the membership voted to accept the offer. The company was advised of the acceptance. The new contract consisted of the 1981–1984 agreement as modified by the company's written final offer. The relevant part of that final offer provided:

> Also, as discussed during our meeting on September 21, 1984, competitive pressures require that we discontinue our Company-operated fleet at the Portland operation. Our Traffic Department has been advised to develop a timetable and program to provide outside coverage for our transportation requirements. Once that program is finalized, I will review that program with your office.

Months later, the company prepared a draft of the new contract. The union objected that the draft did not reflect the agreement that was reached in negotiations, and refused to sign it. The company then laid off all of its union truck drivers and contracted with an independent labor broker to supply drivers for the company truck fleet.

---

[*] Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

**1350**

Until the time that it refused to go to arbitration, the company's actions indicated its understanding that a valid collective bargaining contract existed. It began implementing the terms of the final offer that was incorporated in the contract. Its decision to hire outside drivers for its truck fleet was purportedly done under authority of the final agreement. Despite those actions, the company contends that the contract was nullified because the parties never agreed on the substantive terms. It argues in effect that the parties were so far apart in their understanding of the language in the final offer that there was no meeting of the minds, and hence no contract.

■ None of the relevant facts are in dispute. The only question is, given these facts, did the parties have a contract as a matter of law? In determining whether a contract was formed, the court employs "general contract principles adapted to the collective bargaining context to determine whether the two sides have reached an agreement." *Cf. NLRB v. World Evangelism, Inc.*, 656 F.2d 1349, 1355 (9th Cir. 1981). Normal rules of offer and acceptance govern in collective bargaining. *Teamsters, Chauffeurs, Warehousemen & Helpers Local 524 v. Billington*, 402 F.2d 510, 513 n. 2 (9th Cir.1968); *Operating Engineers Pension Trust v. Cecil Backhoe*, 795 F.2d 1501, 1504 (9th Cir. 1986).

■ The company's final offer, and the union's acceptance by ratification of the membership, bear all the outward indicia of a valid contract. Union acceptance of an employer's final offer is all that is necessary to create a contract, regardless of whether either party later refuses to sign a written draft. *NLRB v. Deauville Hotel*, 751 F.2d 1562, 1569 n. 10 (11th Cir.1985); *Teamsters v. Billington*, 402 F.2d at 513; *Service Employees Int'l Local No. 55 v. Cedar Rapids Community School Dist.*, 222 N.W.2d 403, 405 (Iowa 1974) (manifestation of assent to same terms, reached by process of offer and acceptance, required for valid contract). The court may consider the surrounding circumstances and the in-

tentions of the parties to determine if a collective bargaining agreement exists. *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir.1984). The union argues that the company's behavior prior to the bringing of this suit shows that it believed that a contract existed. However, where there are objective manifestations of the parties' intent to create a contract, the court need look no further. *Caporale v. Mar Les, Inc.*, 656 F.2d 242, 244 (7th Cir.1981). *See also* 1 Williston on Contracts § 20 (3d ed. Jaeger 1961); 17 C.J.S. *Contracts* § 32; *Huge v. Overly*, 445 F.Supp. 946, 949 (W.D.Pa.1978) (objective standard applies to formation of contract, regardless of meeting of minds in subjective sense); *United States v. Roberts*, 436 F.Supp. 553, 557–58 (E.D.Tx.1977) (to determine whether parties agreed to terms of contract, it is objective, not subjective intention of parties that the court must ascertain).

It thus falls to the company to demonstrate that, although its agreement with the union has the outward appearance of a valid contract, there was no meeting of the minds because the parties understood entirely different things by the written terms of the agreement. *See U.S. for Use and Benefit of Union Bldg. Materials Corp. v. Haas & Haynie Corp.*, 577 F.2d 568, 573 (9th Cir.1978) (If neither party knows or has reason to know the meaning attached by the other to an ambiguous clause, there is no contract.) (citing Restatement (Second) of Contracts § 21A(1)). *See also BA Mortgage Co. v. Unisal Development Corp.*, 469 F.Supp. 1258, 1267–68 (D.Colo. 1979) (Where parties in good faith ascribe different meanings to a material term of a contract, there is no meeting of the minds, and no valid contract.); *Walther & CIE v. United States Fidelity & Guaranty Co.*, 397 F.Supp. 937, 941 (M.D.Pa.1975) (If the court is convinced that the parties gave substantially different meanings to the words of an agreement, there is no contract.)

■ However, "[t]he fact that differences subsequently arise between the parties as to the construction of the contract

... is not of itself sufficient to affect the validity of the original contract or to show that the minds of the parties did not meet with respect thereto." 17 C.J.S. *Contracts* § 31. *See Benjamin Foster Co. v. Commonwealth,* 318 Mass. 190, 61 N.E.2d 147, 150–51 (1945) ("The fact that an executed written contract contains within itself difficulties of construction about which the parties disagree does not enable a party to contend that the minds never met."). *See also, Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.,* 302 So.2d 404, 407 (Fla 1974); *Leitner v. Braen,* 51 N.J.Super. 31, 143 A.2d 256, 260 (App.Div. 1958); *Koelling v. Bank of Sullivan,* 220 S.W.2d 794, 796 (Mo.App.1949); *Milliken-Tomlinson Co. v. American Sugar Refining Co.,* 9 F.2d 809, 812–13 (1st Cir.1925).

The company has made no showing on this issue other than the parties' current disagreement over the terms of the company's final offer. That showing is not sufficient to require that the contract be set aside.

## II. *Did the Regional Director's Decision Preclude Arbitration?*

■ After the company laid off its union truck drivers, the union filed an unfair labor practice charge with the regional director of the NLRB. The regional director found that "it does not appear that further proceedings on the charge are warranted inasmuch as the allegations in the unfair labor practice charge show that the subcontracting of the truck-driver job classification was discussed during the course of negotiations and was part of the Employer's final offer which was accepted by a ratification vote on September 29, 1984." The company argues that the NLRB's decision is *res judicata* in this matter, and that an arbitrator would be powerless to issue a contrary decision.

In this circuit there are arguably two lines of authority on the question of the preclusive effect of a prior NLRB decision. *See Local Joint Executive Bd. v. Royal Center, Inc.,* 796 F.2d 1159, 1164 (9th Cir. 1986), *cert. denied,* 107 S.Ct. 881 (1987). However, the two lines can be harmonized.

We have stated clearly that "in cases involving issues of fact or contract interpretation the NLRB's refusal to issue a complaint does not act as res judicata or bar a party from seeking arbitration under the collective bargaining agreement and ... no collateral estoppel effect attaches to such refusal." *Edna H. Pagel, Inc. v. Teamsters Local Union 595,* 667 F.2d 1275, 1279–80 (9th Cir.1982); *Hospital and Institutional Workers Union Local 250 v. Marshal Hale Memorial Hospital,* 647 F.2d 38, 41–42 (9th Cir.1981). The company relies upon *Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271 (9th Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). In that case, we found that an arbitrator's award contrary to an earlier ruling of the NLRB impinged on the Board's authority under section 9 of the National Labor Relations Act to determine the appropriate bargaining unit. Our decision in *Stevens* was limited to questions coming under section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b), which provides that "[t]he Board shall decide in each case whether ... the unit appropriate for purposes of collective bargaining shall be the employer unit, craft unit, plant unit or subdivision thereof." Moreover, in *Stevens,* the NLRB had not simply declined to issue a complaint. It had accepted the case on the merits and issued a decision and order.

In *Local Joint Executive Board v. Royal Center, Inc.,* 796 F.2d 1159 (9th Cir.1986), we were again faced with a question implicating section 9(b). In *Royal Center,* however, the NLRB had not ruled on the merits of the section 9(b) dispute, but had refused to issue a complaint. We followed *Edna H. Pagel* and found that an NLRB decision not to issue a complaint is not *res judicata* in a subsequent arbitration. 796 F.2d at 1164–65.

Here, the regional director's only action was to refuse to issue a complaint. We follow the established rule of *Edna H. Pagel* and *Royal Center,* and conclude that the NLRB's decision does not preclude arbitration of this dispute. Our decision is consistent with the law in other circuits.

*See, e.g., Miller Brewing Co. v. Brewery Workers Local Union No. 9,* 739 F.2d 1159, 1166 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *Courier-Citizen v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 276 n. 6 (1st Cir.1983); *United Food and Commercial Workers v. NLRB,* 675 F.2d 346, 352 n. 7 (D.C.Cir.1982); *Crescent City Lodge No. 37 v. Boland Marine and Manufacturing Co.,* 591 F.2d 1184, 1187 (5th Cir.1979); *Peltzman v. Central Gulf Lines, Inc.,* 497 F.2d 332, 334 (2d Cir.1974), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 750 (1976).

## CONCLUSION

The company's final offer, and the union's acceptance, were sufficient to establish that the parties had an intent to contract. The later disagreement over the meaning of the terms did not by itself show that there was no original understanding between the parties as to what they had agreed upon. There was a valid contract, providing for binding arbitration of "any difference between the Local Management and the Union or employees as to the interpretation or application of, or compliance with this Agreement respecting wages, hours, or conditions of employment...." The dispute over the company's employment of nonunion truck drivers comes under the arbitration clause, and is a proper subject for arbitration. The decision of the NLRB not to issue a complaint in the matter does not preclude arbitration.

Our determination that this dispute is arbitrable is based on the language of the arbitration clause. We make no judgment as to the substantive contract clauses that go to the merits of the dispute. *See Laborers Int'l Union Local 252 v. Town Concrete Pipe of Washington, Inc.,* 680 F.2d 1284, 1285 (9th Cir.1982). "Interpretation of substantive provisions must be left to the arbitrator in the first instance." *Town Concrete,* 680 F.2d at 1285.

AFFIRMED.